# The Michigan Central Railroad Company

*v.*

## Ebenezer F. Curtis.

1.  Carrier—*liability for delay in delivering to succeeding line.*   If fruit
trees and shrubbery are destroyed by the cold, in the hands of an interme-
diate carrier, by reason of negligence or unreasonable delay, or if, by such
delay in transportation or in delivering to the next carrier in the line, the
latter can not, by reasonable efforts, transport and deliver before they are
destroyed by cold weather, the former carrier will be liable for the loss.

2.  Although a carrier may be guilty of unreasonable delay in transpor-
tation, he will not be liable for a loss caused by cold weather, if he delivers
the freight to the next company in the line in sufficient time for it, by rea-
sonable diligence, to transport and deliver to the consignee before injury by
the cold.

3.  Same—*excuse for delay in delivery to next carrier.*   Where fruit and
ornamental trees shipped were destroyed by frost before reaching their desti-
nation, and this was caused by delay of transportation to Chicago, where
they were to pass into the hands of another line, the fact that the company's
buildings in Chicago were destroyed by fire, will not furnish a sufficient ex-
cuse for the delay, where it appears that other shipments, made afterwards,
went through in time, and were delivered to the other line.

4.  Same—*delivery to succeeding line.*   Where it is the custom of a rail-
way company, to whom freight is delivered in the car of another line for
transportation, not to receive and forward the same until expense bills are
delivered by the preceding line, with directions, the first company, being
conversant with the rule, can not be regarded as having delivered a car of
freight before complying with such custom, and thus exonerate itself from
loss occasioned by the delay.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Messrs. WALKER, DEXTER & SMITH, for the appellants.

Mr. F. W. S. BRAWLEY, and Mr. D. W. JACKSON, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears, from this record, that this was an action brought against appellants, as common carriers from Detroit, Michigan, to Chicago, in this State, to recover the value of a quantity of fruit trees and shrubbery, shipped from Rochester, New York, to various points in this State. Appellee claims that the trees were destroyed by freezing whilst *en route*. The shipment was made at Rochester on the 28th day of October, 1871, by the Blue Line Transportation Company, and receipts given by the New York Central railroad.

The trees arrived at Detroit and were delivered to appellants on the the 3d day of November, 1871, with the exception of two boxes consigned to Lena, in this State, which arrived at Detroit on the 8th day of that month. All of the trees except those shipped to Lena reached Marshall, a station on appellants' road, on the 4th of November, and remained there until the 14th of that month, when they were started for Chicago, and arrived at that point at 4 o'clock on the evening of the 16th.

Appellants claim that the trees were delivered on the same day to the Illinois Central railroad, for further transportation to the places of their destination. But this is denied by appellee, who insists that the trees were not delivered to that company until the 22d of the month. This delivery did not embrace the trees shipped to Lena, but they were delivered to the Northwestern Railroad Company, for transportation to their destination. The trees delivered to the Illinois Central railroad arrived at Freeport, to which place they were shipped,

on the 27th day of November, and those shipped to Lena arrived there, one box on the 21st and the other on the 22d.

It is admitted that the ordinary time for transportation from Detroit to Chicago was three days, and the ordinary time from Chicago to Freeport and other points on the Illinois Central railroad to which this freight was consigned, was from eighteen to twenty-four hours. The trees were frozen when they reached the various places to which they were shipped, but appellant insists they did not freeze whilst they were in their hands, and that they can not be held liable for any damage to the trees after they had passed from their possession to that of others.

"Appellants claim that they did not undertake to deliver the trees within any given time, and that the delay at Marshall, between Detroit and Chicago, was caused by the great fire of October 8th and 9th, A. D. 1871, which burned all appellants' freight houses in the city of Chicago, and destroyed all its facilities for handling and delivering freight."

The jury found a verdict in favor of plaintiff for $1950.50, and, after overruling a motion for a new trial, the court rendered judgment on the verdict, and defendants appeal.

The question is, whether appellants were guilty of negligence which caused the loss sustained by appellee. If it was remote, and only a link in the chain of causes which ultimately produced the injury, then they are not liable, even if there was negligence; but if they failed to exercise due diligence commensurate with the duty of the undertaking, and the negligence was a proximate cause of the loss, they must be held liable. Had the trees come to Chicago in the usual time, from Detroit, the loss would not have occurred. Appellants were the last carriers having the custody of the trees, before they passed to the railroads that made the ultimate delivery to the consignee. They were, therefore, proximate in the chain of agents that held the trees in custody, and if the trees were not destroyed in their hands, they were, in the hands of the next carriers to whom they made delivery. If the trees were destroyed in their hands by reason of negligence or unreason-

able delay, or if such delay held the trees back until the next carrier could not, by reasonable efforts, prevent the destruction of the trees, then appellants are liable for the loss. They did not have the right to delay, unreasonably, the delivery of the trees until they would inevitably be destroyed in the hands of the next carrier, and then be heard to say that they were destroyed in the hands of the company into whose hands they passed them for ultimate delivery. If they were. guilty of such negligence, they thus rendered themselves liable, no matter in whose hands the trees were overtaken and destroyed by the frost, if the injury was the natural and proximate result of their acts.

Suppose they had held the trees thirty days, instead of the time it is claimed they did hold them, and then delivered them to the connecting carrier in the line, and the next day, as a consequence of such delay, the trees had been frozen, before it was possible for the last line to make delivery, would any one claim appellants were free from liability? Whether justifiable or not, they, in such a case, would be the cause of the loss. We think, if appellants withheld these trees until the 22d day of November, that such action caused the destruction of the property, as the evidence fully satisfies our minds that the cold was sufficiently intense, on the 22d and 23d, to destroy the trees, if it was not so for several previous days.

The law holding appellants to a high degree of diligence as common carriers, if there were circumstances justifying the delay, to exonerate themselves from liability they were bound to satisfactorily show such facts.

Appellants, in the second point made in their brief, urge the memorable fire in Chicago, on the 8th and 9th of October, 1871, as an excuse for the delay, as it destroyed their freight buildings and other facilities for handling freight, as also the effect thereby produced on the freight traffic between Chicago and the East. Have appellants shown that they used all reasonable efforts to transport this property in due time? It appears that other freight came over this road after the fire, in about the usual time; that a car containing trees, and con-

signed to appellee at Rockford, etc., from Rochester, New York, was billed at Suspension Bridge on the 24th of October, 1871, and arrived at Chicago, over appellants' road, on the 31st of the same month, and was delivered to the Northwestern Railroad Company on the 3d of November, 1871; that the Lena trees were received at Detroit on the 8th day of November, 1871, and were received in Chicago on the 16th, with the trees shipped on the 3d, five days before. This shows that freight was not brought through in the order in which it was shipped, notwithstanding the testimony of appellants' witnesses that it was the custom of the company to bring freight forward in the order in which it was received by them. Nor is it explained why this freight did not arrive in the same time as the other. The only explanation is proof of the general custom. From the evidence, the jury were warranted in finding that appellants were guilty of unreasonable delay in bringing this freight forward to Chicago. .

As to the car load of trees which was sent to Freeport, the destruction of the freight buildings could not matter in the least, inasmuch as those trees never went into the depot; and we infer the tracks had been repaired for some time previous to the shipment of the trees, so that the transfer could be made in the usual mode.

But conceding that unreasonable delay did occur, still the company could not be held liable for the loss, if they brought the freight forward and delivered it to other companies in sufficient time for them, by reasonable diligence, to have delivered the trees before they could have been injured by the frost. The whole question, then, turns upon whether the trees were thus delivered to the other companies.

It seems that there is no dispute that the trees were received in Chicago on the 16th of November, and that the car containing them was run into the yard of the Illinois Central road on the 16th or 17th, but it is contended that the latter road, according to custom and the usual course of business between the roads, had no right to send this car, containing these trees, forward until appellants should send the expense

bills, with directions to ship, to the office of the Illinois Central road, and that the bills and such instructions, in this case, were not so sent until the morning of the 22d of November, and hence the latter company had no right to send this freight forward, and were not in complete possession of the property prior to that time.

Tucker, the general freight agent, testified that the Illinois Central railroad would not receive and forward freight without the expense bills from appellants' road, but he also states that he does not know the fact of his own knowledge.

Frink, foreman of out-freight for the Illinois Central railroad, testified that he went into that position on the 20th of November, 1871; that appellants sent this car into their yard on the afternoon of the 16th, and he entered it on his books as being received on the morning of the next day. He also testified that the engines of his road took cars that were going over their road from the yard to his office; that the car was not there on the 21st, but he found it there on the morning of the 22d, and that he then went into his office and for the first time he found the expense bills on his table. He testified: "I remember distinctly that when I went in the house in the morning, and went along, my man opened the cars, and this car of trees was in the house, and I thought immediately whether I had bills of it or not. I knew that I had none the day before; I went in where I kept my bills, and found them there." But he says that he does not know how they came there or who brought them.

Tucker, the freight agent of the Illinois Central Railroad Co., testified: "We always require the expense bills before we take possession of freight to handle for our road. I believe that is a universal custom. If I had regarded that as a car-load lot, I should have sent to the defendant for the bills; but not so regarding it, I sent it to the Burlington, expecting that they had the bills there. When I saw a car load of miscellaneous freight, or a car containing anything that I thought should be transferred, I sent it up there."

The evidence shows that it was the custom of appellants to send the expense bills to the Illinois Central railroad, but we fail to find any evidence as to the time when they were sent in this case. Appellants, to prove that fact, only prove and rely on proof of their custom and general course of business. It also appears that the Illinois Central railroad sometimes, when there was delay, sent to appellants for expense bills, from which it may be inferred that appellants were not always prompt in transmitting them. But it does not appear that the Illinois Central Railroad Company were under any obligations to so send, but, on the contrary, we infer that appellants were bound to do so, when freight which was received by them was to be sent forward by the Illinois Central.

All the evidence considered, we think the jury were warranted in finding that these trees were not fully delivered and put into the possession of the Illinois Central Company until on the 22d of November, and it is not contested that the latter company sent them forward on the next day.

Then, when does the evidence show that the trees were destroyed? It would seem to be obvious that it did not occur before they reached Chicago, and the admission by the stipulation shows that the coldest weather that occurred after the trees were shipped, until they arrived at Freeport and Lena, was on the 22d, 23d, 24th and 25th of November. The coldest was on the morning of the 23d, and it was but two degrees warmer the evening before. From the 15th to the 27th it was below freezing point, with but few exceptions, and then only slightly above. Whatever the theory in reference to such matters may be, we have the undoubted fact that the trees were in fact frozen, and we think the jury were fully warranted in finding that it occurred in Chicago, or at least in part, before leaving there, and was completed on the next day after they were sent forward, and we think that they were justified in finding that, had the car containing the trees been fully and completely delivered in the usual time, or at least without unnecessary delay, to the Illinois Central road, after reaching Chicago, the trees would have gone forward in time to have

reached their destination without injury.  The cold weather was approaching, and the hazard of delay was increasing, and it required, considering the nature of the freight, and its liability to injury from frost, that all reasonable efforts should have been used to get them into the hands of the next carrier in the line before winter should set in, or the weather become severely cold.  Failing to do so, appellants were liable for the neglect.

The evidence in this, as in many other cases, is not of that clear and satisfactory character as to be free from doubt, but when it is all considered, we think it justified the verdict, and the judgment of the court below must be affirmed.

*Judgment affirmed.*