ISAAC N. ARMENTROUT, Appellant, v. THE ST. LOUIS, KANSAS CITY & NORTHERN RAILWAY COMPANY, Respondent.

### February 14, 1876.

1. After delivery of goods to a railway company, and receipt of the bill of lading therefor, the consignor loses all right of control over them, except the legal right of stoppage *in transitu*.

2. In case of injury to goods, the act of God cannot be set up as a defense by the carrier, if guilty of previous misconduct or neglect by which the exposure resulting in the loss was occasioned.

APPEAL from St. Louis Circuit Court.

*Reversed and judgment.*

*Bereman & Smith*, for appellants, cited: Wolf v. American Ex. Co., 43 Mo. 421; Bos. & Pul. 582; 2 Red., L. B. (5th ed.) 202, sec. 6; Comstock v. Affoelter, 50 Mo. 411; Davis v. Peck, 8 Tenn. 330; Arbuckle v. Thompson, 37 Penn. 170; Sanford v. Housatonic R. W., 11 Cush. (Mass.) 155; Green v. Clark, 13 Barb. 62; 2 Redf. on Ry., sec. 10; Coombs v. Bristol & Exeter Ry. Co., 3 H. & N. 4; Davenport N. Bank v. Homeyer, 45 Mo. 145; Bostwick v. Baltimore & Ohio R. R. Co., 55 Barb. 137; Long v. New York Central R. R. Co., 50 N. J. 76; 1 Pars. Mer. Law, 137, and notes; Odell v. Boston & Maine Ry. Co., 109 Mass. 50; Bryant v. Nix, 4 M. & W. 788; Grove v. Brien, 8 How. 438; Gibson v. Stevens, 8 How. 398; Holbrook v.

Wright, 24 Wend. 169 ; Dows v. Green (Smith, J.), 24 N. Y. 645 ; Blossom v. Champion, 37 Barb. 563.

*Blodgett & Dickson*, for respondents, cited : Ang. on Car., sec. 511, p. 476 ; sec. 499, p. 468 ; Griffith v. Ingelow, 6 Serg. & R. 437 ; Ballentine v. North Missouri R. R. Co., 40 Mo. 505 ; 2 Greenl., sec. 256 ; Darwin v. Potter, 5 Den. (N. Y.) 306–308 ; Pendle v. Rench, 4 McLean, 259.

BAKEWELL, J., delivered the opinion of the court.

Plaintiff sues defendant, a common carrier, for breach of contract of affreightment, in not fulfilling its undertaking with plaintiff that it would securely keep and safely carry over its road, from Ottumwa, Iowa, to St. Louis, Missouri, and in reasonable time securely deliver to plaintiff's agent, in St. Louis, 100 boxes of eggs, whereby said eggs were totally lost to plaintiff, as he alleges, to his damage $2,000.

The case was tried by the court, a jury being waived, upon the following agreed statement of facts.

Plaintiff bought the 100 boxes of eggs in question of McCullough & Lilburn, at Ottumwa, Iowa, at the price of $1,528.04 ; he paid $10 in cash, and agreed with McCullough & Lilburn that, for the balance of the purchase price, they should draw against the shipment on Bussy & Co., at St. Louis, with the bill of lading, or receipt therefor of defendant, attached ; of all which defendant had no knowledge.

Bussy & Co. were the commission merchants of plaintiff, to sell said eggs for plaintiff's account on arrival, and had no other interest in said eggs or the proceeds.

That on November 25, 1872, McCullough & Lilburn, accordingly delivered said eggs to defendant at Ottumwa, Iowa, and took its bill of lading, or receipt, therefor, which is on file in this cause, and may be read in evidence by plaintiff.

That thereupon George McCullough, one of the firm of McCullough & Lilburn, requested defendant to hold said eggs until ordered by them to be sent forward, the particu-

lars of that transaction being set forth in an affidavit of one Phillipps, as follows :

" On morning of November 25, 1872, Geo. McCullough came to my office, in Ottumwa, and requested bill of lading for 100 boxes of eggs, to be shipped to Bussy & Co., St. Louis, and not load till following day. This I refused. The eggs were loaded the same day, November 25th, and Geo. McCullough requested car to be held at their risk until draft was accepted. Afternoon of November 27th he gave order to forward car, which was done on first train, morning of 28th, A. M., car 798."

This request to hold and agreement to take all risks was made verbally.

That on November 25, 1872, said McCullough & Lilburn drew their draft on Bussy & Co. for said sum of $1,518.04, with said bill of lading, or receipt, attached ; that the same, with bill of lading, or receipt, attached, were presented to Messrs. Bussy & Co., for acceptance, on November 27, 1872, and the draft was by them accepted, and paid by them on November 30, 1872, and charged to account of plaintiff, as plaintiff and Bussy & Co. had agreed it should be, and said draft is annexed hereto, and may be read in evidence herein.

That on November 28, 1872, McCullough & Lilburn directed defendant to forward the eggs to the consignees, Bussy & Co., at St. Louis, and it was at once done. They arrived at St. Louis, at ten A. M., on Sunday, December 1st, being a reasonable time after being forwarded, and notice of their arrival was given to Bussy & Co. on Monday, December 2d, as soon as could be done after their arrival ; and that three days is ample and the usual time for freight to be carried from Ottumwa to St. Louis.

That Bussy & Co. had sold said eggs to arrive, on November 30th, at the price of $1,641.78, but, owing to the eggs having been frozen, they were sold to the best advantage, for $1,156.62 ; the said price of $1,641.78 being the usual

and market price thereof in St. Louis, and said sale being lost because the eggs were so frozen.

That said eggs were so frozen because of the extreme cold weather on the route, and they would not have been frozen if sent forward on November 25, 1872.

That defendant had no knowledge of the interest of any one in the eggs, other than that of the consignor, except that shown, if any, by the receipt, or bill of lading, and by the affidavit of Phillipps.

That plaintiff, by his commission merchants, Bussy & Co., consignees, paid defendant the freight, $64, on said shipment, on its arrival in St. Louis.

The bill of lading is in the usual form, and sets forth that, on November 25, 1872, the date of the bill, there were received, in good order, at Ottumwa, by defendants, from McCullough & Lilburn, to be delivered to Messrs. Bussy & Co., at 16 South Commercial street, St. Louis, Missouri, 100 boxes of eggs, marked " M. & L., Ottumwa, Iowa, for Bussy & Co., St. Louis, Missouri."

The court found for defendant. Plaintiff duly excepted; and, his motion for a new trial being overruled, the case is brought here by appeal.

On this statement of facts the plaintiff was, in our opinion, entitled to recover. The delivery to the defendant, under the circumstances stated, vested the goods in the consignee; the defendant was from that moment liable to plaintiff, and its liability was that of a common carrier, and not that of a warehouseman. The goods were injured by an exposure which would not have occurred had the goods been forwarded without delay; and the delay which occasioned the damage was wholly unauthorized by the consignee or his agent, and occurred at the direction or suggestion of a third party who had no legal right whatever to control the goods.

These principles may be taken to be now well settled, and it is too late to attempt to change them. They are also consonant with common sense and the recognized customs

of trade in this country. A bill of lading is taken by the consignor. It is a statement of the carrier to the effect that he has received a certain weight or quantity of a certain description of merchandise, to be forwarded with all reasonable dispatch to a certain person named in the bill. To this bill of lading is attached, as in this instance, a draft on the consignee for the value of the goods, which is forwarded by the shipper to his agent at the point of consignment, for presentation to the consignee for acceptance and payment. This draft and bill of lading attached arrive, in the course of mail, before the goods, and are the assurance to the consignee that the goods are on the way. On the faith of the bill of lading he accepts and pays the draft. It is, therefore, conclusive on the carrier as to persons who have acted on the faith of his contract, and he will not be allowed to modify it without their consent. Any other rule would be destructive of commerce. What commission merchant would be safe in accepting drafts drawn against shipments ; what bank would take bills of lading as collaterals, and make the necessary advance upon them, if the shipper, at will, could forward the bill of lading and detain the goods ? If the carrier, in this instance, could have detained the goods at the request of the consignor, after the bill of lading was out, until the draft was heard from, he might, with equal safety to himself, have given back the goods to the shipper after the acceptance of the draft by the consignee. The vendor, in the case stated, had no such right over these goods as he attempted to exercise. From the moment they were received by the carrier he parted with all right to control them in any way, except the right to stop them, before they reached their destination, in the sole case of the insolvency of the consignee.

There was something said in argument as to this being a case of injury by the act of God. The severe cold which injured the eggs could not have been prevented, nor, perhaps, foreseen, by man ; but, if the carrier had done his

duty, the goods would have arrived at their destination before the frost. The carrier is liable for a loss arising from an inevitable necessity existing at the time of the loss, if guilty of previous misconduct or negligence by which the exposure which resulted in the loss was occasioned.

For the reasons stated the judgment of the court below must be reversed. But, inasmuch as every fact necessary to a final judgment in favor of plaintiff would appear to be fully set out in the agreed statement of facts, it does not seem necessary to remand the cause for a new trial, and we accordingly give judgment here for plaintiff for $721, being the difference between the amount for which the eggs were sold to best advantage, on their arrival, and the sale which was lost by the default of defendant, after adding thereto interest from the date of the commencement of the suit to the entry of judgment here. The other judges concur.