HEWETT v. THE CHICAGO, BURLINGTON & QUINCY R'Y Co.

1. **Evidence**: PAROL TO CONTRADICT BILL OF LADING. Where defendant, upon the receipt for shipment of certain goods from plaintiff, gave him a bill of lading therefor, which stated that the goods were to be shipped to Council Bluffs—the end of defendant's road, it was incompetent for the plaintiff to testify that he made an oral contract with defendant's agent at the place of shipment to transport the goods to Omaha, a point beyond the terminus of defendant's road.

2. ——: OF CUSTOM TO EXPLAIN DELIVERY OF RECEIPT. Where it became material to determine whether a certain car was delivered by defendant to a subsequent carrier on the 13th or 14th day of the month, and a receipt of the subsequent carrier for the car was introduced, which was dated the 11th, but the evidence showed that it (the receipt) was not in fact delivered until the 14th, and defendant's yard-master testified that the car was actually delivered on the afternoon of the 13th, *held* that it was error to exclude evidence offered by defendant to prove that, by the custom of the companies, receipts for cars received in the afternoon and evening were not delivered until the next morning.

3. ——: HEARSAY. Statements made to plaintiff's agent by an agent of a subsequent carrier, as to the fact that the car in question had not arrived at its destination at a certain time, were not competent to bind defendant as to the time when the car was delivered to the subsequent carrier, and should have been excluded as mere hearsay.

4. **Railroads**: DUTY TO DELIVER TO SUBSEQUENT CARRIER: TIME AND MANNER OF DELIVERY. Where a railroad company accepts goods to be shipped to a point beyond the terminus of its line, it is bound to convey

them to such terminus with safety and dispatch, and to deliver them within a reasonable time to some other carrier at that point, to be transported to their destination. Such delivery may be made by a transfer of the goods to a car of the subsequent carrier, or by the delivery of the car itself containing the goods, in good order, to the subsequent carrier. To deliver the car in bad order is not sufficient, if the subsequent carrier refuses to receive it; and to delay the car containing the goods for repairs, before delivery, renders the company liable for damages caused by such delay.

5. ———: DELAY IN FORWARDING PERISHABLE PROPERTY: LIABILITY FOR DAMAGE BY FREEZING. Where a railway company accepts a car load of perishable property (potatoes) to be shipped beyond the terminus of its line at a season of the year when, in the course of nature, severely cold weather is to be apprehended, it is bound to use great diligence in forwarding the property with dispatch; and where by its delay in delivering it to a subsequent carrier it is damaged by freezing, it is liable to the owner for such damages. (See opinion for principles and authorities relating to liability of carriers for damages by the elements.)

*Appeal from Montgomery District Court.*

THURSDAY, JUNE 5.

PLAINTIFF sues for the value of a car load of potatoes delivered by him to defendant for shipment, and which were destroyed by being frozen through defendant's negligence, as he alleges, in failing to forward them promptly to their destination. The case was tried to a referee, who found that defendant was liable. Defendant moved to set aside the referee's report on the grounds that the findings of fact and conclusions of law were not supported by the evidence, and of alleged errors committed on the trial in the admission and exclusion of testimony. The district court overruled the motion and entered judgment for plaintiff on the report. Defendant appeals.

*Smith McPherson,* for appellant.

*C. E. Richards,* for appellee.

REED, J.—I. The property was shipped at Lenox, in this state, and was consigned to plaintiff at Omaha, Nebraska.

**1. EVIDENCE: parol to contradict bill of lading.** At the time the property was delivered to defendant, plaintiff paid the freight charges thereon to its destination, and received from defendant the following bill of lading:

"LENOX, IOWA, November 10th, 1880.

"Received from H. H. Hewett, in apparent good order, by the Chicago, Burlington & Quincy Railroad Company, to be transported to Council Bluffs, Iowa, the following articles as marked and described below, subject to the general rules of said company, and the conditions and regulations of their public freight tariff applying on shipments of freight from this station to the destination named; it being expressly agreed and understood that the said Chicago, Burlington & Quincy Railroad Company, in receiving the said package to be forwarded as aforesaid, assumes no other responsibility for their safety than may be incurred on this road. Marks and consignee, H. H. Hewett, Omaha, Nebraska. Description of articles, as given by the consignee: Car Q. R., weight 26,500. Q. 1808. Paid to apply, $50.35. Prepay & R. $10.00."

On the trial, the referee permitted plaintiff to testify, against defendant's objection, that he made a bargain with defendant's agent at Lenox to ship a car of potatoes at 19 cents per hundred from Lenox to Omaha. This testimony should have been excluded. The bill of lading embodies the contract between the parties. By its terms the undertaking of defendant was to transport the property to Council Bluffs. That was the terminus of its line, and it expressly limited its liability to such responsibility for the safety of the property as might be incurred on its own road. As the property was consigned, however, to a point beyond the terminus of defendant's road, it was bound to deliver it at that point within a reasonable time to some other carrier, to be forwarded to its destination; but it was not liable for injuries which might be caused by the negligence of such other carrier after

the property was delivered to it.    See *Mulligan v. The Ill. C. R. Co.*, 36 Iowa, 181.

The parol evidence tended to prove a different undertaking by defendant.    It tended to prove an undertaking to convey the property to Omaha.    The referee found as a conclusion of law "that defendant is liable to the plaintiff for damages sustained by him by reason of negligence in not transporting said potatoes to their destination within a reasonable time." This conclusion must have been based on the parol evidence, rather than the written contract.    Its admission, then, was prejudicial as well as erroneous.

II.    The property was received by defendant at Lenox on the 10th of November, and it arrived in Council Bluffs on the 11th, and on the 15th it was delivered to plaint-

2. ——— : of custom to explain delivery of receipt.

iff, in Omaha, by the Union Pacific Railroad Company, the carrier which forwarded it from Council Bluffs.    The weather was warm and pleasant on the 10th when the defendant received the property, but between that and the 15th it turned cold, and the potatoes were badly frozen when plaintiff received them in Omaha.    It was material, therefore, to determine whether the injury was occasioned by the failure of defendant to deliver the property to the Union Pacific Company within a reasonable time after its arrival in Council Bluffs, or by the failure of the latter company to deliver it to plaintiff in Omaha within a reasonable time after it received it from defendant.    When the car containing the potatoes arrived in Council Bluffs on the 11th, it was at once placed by defendant's yard-master in the yard used for the delivery of freight to the Union Pacific Company.    By the usage of the companies, the placing of a car in this yard is regarded as a delivery to the latter company; but defendant's yard-master was informed on the 12th that the Union Pacific Company refused to forward the car in question, for the reason that it was out of repair.    He immediately had it removed from the yard to a track belonging to defendant, where it was repaired.    The yard-master testified on the trial that the repair of the car was completed, and

that it was taken back to the yard and delivered to the Union Pacific Company, on the afternoon of the 13th. A receipt for the car from the Union Pacific Company to defendant was introduced in evidence. This receipt was dated on the 11th, but the evidence showed that it was not delivered to defendant until the 14th. The referee found that the car was delivered to the Union Pacific Compony on the 14th. This finding must have been based on the fact that the receipt from that company to defendant for the car was delivered on that day; for it is the only evidence of the time of the delivery of the car, except the testimony of the yard-master, who swears that it was delivered on the 13th. Defendant offered evidence tending to prove that, by the usage of the companies, receipts for cars which are received by one from the other in the afternoon or evening are not delivered until the next morning after the receipt of the cars; but the evidence was excluded on plaintiff's objection. It should have been admitted. The fact of the delivery of the receipt on the 14th was regarded by the referee as more satisfactory evidence of the time of the delivery of the car, than the testimony of defendant's yard-master. If the usage had been established, that fact, instead of being contradictory of the statement of the witness that the car was delivered on the 13th, would have been entirely consistent with that statement.

III.  For the purpose of proving the time when the car arrived in Omaha, plaintiff introduced his agent, who received

3. ——:
hearsay. the property from the Union Pacific Company at Omaha, and who was permitted against defendant's objection to testify that, on the morning of the 15th of November, he called at the frieght office of the Union Pacific Company in Omaha, and was informed by a clerk or agent in the office that the car had not yet arrived, and that he called at the same place at a later hour in the day, when he was informed that it had arrived. The evidence was clearly incompetent, and should have been excluded. It is not pretended that the person who made these statements to plaintiff's agent

had any authority to bind defendant by the statements. They were, therefore, mere hearsay, and were inadmissible against defendant.

IV.  Appellant claims that the evidence shows without dispute that it performed every undertaking of its contract with plaintiff, and that upon the established facts it is not liable for the injury to the property complained of.  As we have already seen, its undertakings were, *First*, to convey the property to Council Bluffs with safety and dispatch, and, *Second*, to deliver it within a reasonable time to some other carrier at that point, to be transported to its destination.  It is not claimed that the evidence shows any failure by defendant to perform the first of these undertakings, but its liability, if any, arises out of its failure to deliver the property within a reasonable time to the Union Pacific Company.  Defendant's position is that, by placing the car in the yard of the other company, it delivered it to that company, and that, as this was done immediately after the car arrived in Council Bluffs, it used all the diligence which was possible under the circumstances.

4. RAIL-
ROADS: duty
to deliver to
subsequent
carrier: time
and manner
of delivery.

We think, however, that we would not be warranted in disturbing the judgment on this ground.  Defendant's undertaking could be performed only by so placing the property in the possession or under the control of the other carrier as that it would thereby be rendered responsible for its care, and would be obliged to forward it to its destination; and we cannot say from the evidence that it did this before the 2d or 3d day after the property arrived in Council Bluffs.  The delivery could have been made, either by transferring the property from the car in which it was shipped to Council Bluffs to one belonging to the other company, or by turning over the car with the property in it.  If the latter course was taken, the other company had the right to demand that the car should be in such condition of repair as that the property could be conveyed in it with safety to its destination.  When it placed the car in the yard of the Union Pacific Company on the 11th, it was bound to

know whether it was in such condition of repair. When its agents were informed that the other company refused to forward the car to Omaha because it was in bad order, they recognized its right to so refuse by taking the car back and repairing it. The referee might have found from the evidence that the property was delayed at Council Bluffs for two days or more, and that this delay was occasioned by defendant's attempt to deliver it to the other company in a car which was in such bad order that the property could not be conveyed in it with safety to its destination. We would not be warranted in determining from this evidence that defendant used the degree of diligence in performing its undertaking in this regard which was required of it by the circumstances of the transaction.

V. Another position urged by appellant is, that the damages are too remote; that they are not the proximate consequence of the negligence complained of, but were occasioned by the elements, a cause entirely distinct from the alleged negligence, and one over which it had no control; and hence there can be no recovery.

5. ——: delay in forwarding perishable property: liability for damage by freezing.

It is doubtless true that defendant is responsible for such damages only as are the proximate consequence of its own acts; (Story on Bailments, § 515;) and it is not accountable for such loss as is occasioned by the intervention of the *vis major.* One of the undertakings of the common carrier, however, is that he will not expose the property entrusted to his care to any improper hazards or extraordinary perils; and if, by his act or omission, it is exposed to perils or hazards which ordinary foresight could have apprehended and provided against, he is accountable for such injury as may be occasioned by such exposure. 2 Redfield on Railways, pp. 5, 6, 7; Story on Bailments, § 509. In *Morrison v. Davis & Co.*, 20 Pa. St., 171, and *Denny v. R. Co.*, 13 Gray, 481, it is held that the carrier is not responsible for injuries to the property while in his possession, caused by sudden and extraordinary floods, not-

withstanding the fact that it would not have been exposed to the danger if he had used proper diligence in forwarding it to its destination.

But the injury in those cases was occasioned by causes which human foresight or sagacity could not have apprehended. The holding, therefore, is not in conflict with the rule as we have stated it. The property in question in this case was perishable. It was shipped at a season of the year when severe weather was to be apprehended, in the ordinary course of nature in this climate. These facts imposed on the carrier the duty of forwarding it to its destination with dispatch. Great diligence was required of it in the performance of the duty. If by its negligence the property was exposed while in its possession to the danger which injured it, we think it is responsible for the injury. For the errors which we have pointed out, the judgment is reversed, and the cause remanded to the district court for a new trial.

REVERSED.