GREEN-WHEELER SHOE COMPANY, Appellant, v. CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY.

**Carriers:** DESTRUCTION OF GOODS: ACT OF GOD: LIABILITY OF CARRIER. Where there is a negligent delay in the shipment of goods and the same are lost or destroyed by an unavoidable casualty, which would not have occasioned the loss had there been a prompt shipment, the carrier is liable.

*Appeal from Webster District Court.*— HON. J. H. RICHARD, Judge.

FRIDAY, MARCH 9, 1906.

ACTION to recover the value of two parcels of goods delivered by plaintiff to defendant at Ft. Dodge, Iowa, one parcel to go to Boonville, Mo., and the other to Chanute, Kan., one of which it is alleged was lost and the other damaged by defendant's negligence. The case was tried on an agreed statement of facts and judgment was rendered for defendant. Plaintiff appeals.— *Reversed.*

*Wright & Nugent,* for appellant.

*Carroll Wright, John I. Dille,* and *Kenyon & O'Connor,* for appellee.

McClain, C. J.— In the agreed statement on which the case was tried without other evidence being introduced it is stipulated that the defendant was guilty of negligent delay in the forwarding of the goods of plaintiff from Ft. Dodge to Kansas City, where they were lost or injured on May 30, 1903, by a flood which was so unusual and extraordinary as to constitute an act of God, and that if there had been no such negligent delay the goods would not have been caught in the flood referred to or damaged thereby.

We have presented for our consideration, therefore, the simple question whether a carrier who by a negligent delay in transporting goods has subjected them, in the course of transportation, to a peril which has caused their damage or destruction, and for the consequence of which the carrier would not have been liable had there been no negligent delay intervening, is liable for the loss.

On this question there is a well-recognized conflict in the authorities. In several well-considered cases decided by courts of high authority it was decided, while the question was still new, that the negligent delay of the carrier in transportation could not be regarded as the proximate cause of an ultimate loss by a casualty which in itself constituted an act of God, as that term is used in defining the carrier's exemption from liability, although had the goods been transported with reasonable diligence they would not have been subjected to such casualty, and these cases are very similar to the one before us inasmuch as the loss in each instance was due to the goods being overtaken by an unprecedented flood for the consequence of which the carrier would not be responsible. *Morrison v. Davis,* 20 Pa. 171 (57 Am. Dec. 695); *Denny v. New York Cent. R. Co.,* 13 Gray (Mass.) 481 ('74 Am. Dec. 645); *Railroad Co. v. Reeves,* 10 Wall. 176 (19 L. Ed. 909); *Daniels v. Ballantine,* 23 Ohio St. 532 (13 Am. Rep. 264); *Hunt v. Missouri, K. & T. R. Co.* (Tex. Civ. App.), 74 S. W. 69; *Gleeson v. Virginia Mid-*

*land R. Co.,* 5 Mackey (D. C.) 356.   These cases are predi-
cated upon the view that if the carrier could not reasonably
have foreseen or anticipated that the goods would be over-
taken by such a casualty as a natural and probable result of
the delay, then the negligent delay was not the proximate
cause of the loss, and should be disregarded in determining
the liability for such loss.   A similar course of reasoning
has been applied in other cases, where the loss has been due
immediately to some cause such as accidental fire involving
no negligence on the part of the carrier and within a valid
exception in the bill of lading, but the goods have been
brought within the peril stipulated against by negligent de-
lay in transportation.   *Hoadley v. Northern Trans. Co.,*
115 Mass. 304 (15 Am. Rep. 106); *Yazoo & M. V. R. Co.
v. Millsaps,* 76 Mass. 855 (25 South. 672, 71 Am. St. Rep.
543); *General Fire Extinguisher Co. v. Carolina & N. W.
R. Co.,* 137 N. C. 278 (47 S. E. 208).   For similar reasons
it has been held that loss of or injury to the goods by reason
of their inherent nature, as by freezing or the like, will not
render the carrier liable, even after negligent delay in trans-
portation, if such casualty could not have been foreseen or
anticipated as the natural and probable consequence of such
delay.   *Michigan Cent. R. Co. v. Burrows,* 33 Mich. 6;
*Herring v. Chesapeake & W. R. Co.,* 101 Va. 778 (45 S.
E. 322).

On the other hand, it was held by the Court of Ap-
peals of New York in a case arising out of the same flood
which caused the destruction of the goods involved in *Denny
v. New York Cent. R. Co.,* 13 Gray (Mass.) 481 (74 Am.
Dec. 645), *supra,* that the preceding negligent delay on the
part of the carrier, in consequence of which the goods were
overtaken by the flood, was sufficient ground for holding the
carrier to be liable for the loss.   *Michaels v. New York
Cent. R. Co.,* 30 N. Y. 564 (86 Am. Dec. 415); *Read v.
Spaulding,* 30 N. Y. 630 (86 Am. Dec. 426).   And the
same court has adhered to this view in case of a loss by fire

covered by valid exception in the bill of lading.  *Condict v. Grand Trunk R. Co.,* 54 N. Y. 500.   The Illinois Supreme Court has consistently followed the rule of the New York cases in holding that negligent delay subjecting the goods to loss by the Johnstown flood rendered the carrier liable (*Wald v. Pittsburg, C., C. & St. L. R. Co.,* 162 Ill. 545 (44 N. E. 888, 35 L. R. A. 356, 53 Am. St. Rep. 332) and likewise that similar delay rendered the carrier liable for damage to the goods by freezing. *Michigan Cent. R. Co. v. Curtis,* 80 Ill. 324.   The Alabama and Kentucky courts have held that a destruction by fire within a valid exception in the bill of lading would not excuse the carrier if by negligent delay in transportation the goods had been subjected to such casualty. *Louisville & N. R. Co. v. Gidley,* 119 Ala. 523 (24 South. 753); *Hernsheim v. Newport News & M. V. Co.,* 18 Ky. Law Rep. 227 (35 S. W. 1115).   In Missouri the Supreme Court has followed or approved of what may be designated as the New York rule, under a variety of circumstances. *Davis v. Wabash, St. L. & P. R. Co.,* 89 Mo. 340 (1 S. W. 327); *Pruitt v. Hannibal & St. J. R. Co.,* 62 Mo. 527; *Read v. St. Louis, K. C. & N. R. Co.,* 60 Mo. 199.   And the St. Louis Court of Appeals in that State has applied the same rule in case of a loss by freezing. *Armentrout v. St. Louis, K. C. & N. R. Co.,* 1 Mo. App. 158.   But the Kansas City Court of Appeals in a case of loss by flood has followed the Massachusetts and Pennsylvania cases. *Moffatt Com. Co. v. Union Pac. R. Co.* (Mo. App.) 88 S. W. 117.   And the St. Louis Court of Appeals seems to have recently recognized the same rule. *Grier v. St. Louis Merchants' Bridge Terminal R. Co.,* 108 Mo. App. 565 (84 S. W. 158).   In West Virginia the Supreme Court has held that negligent delay renders the carrier liable for a subsequent loss by freezing. *McGraw v. Baltimore & O. R. Co.,* 18 W. Va. 361 (41 Am. Rep. 696). In Minnesota the court has recently reviewed the whole question in a case involving the loss of goods by the same flood

which caused the loss for which the present suit is brought and has reached the conclusion that the previous negligent delay of the carrier which caused the goods to be subjected to the peril of the flood " concurred and mingled with the act of God " to such an extent that the carrier was precluded from relying upon the act of God as a defense.  *Bibb Broom Corn Co. v. Atchison, T. & S. F. R. Co.,* 94 Minn. 269, 102 N. W. 709 (69 L. R. A. 509).

The irreconcilable conflict in the authorities is recognized by text-writers, and while the weight of general authority has in many cases been said to support the rule announced in the Massachusetts and Pennsylvania cases (1 Thompson, Negligence, section 74; Schouler, Bailments [Ed. 1905] section 348; Hale, Bailments and Carriers, 361; 6 Cyc. 382; notes 36 Am. St. Rep. 838), other authors prefer the New York rule (Hutchinson, Carriers [2nd Ed.] section 200; Ray. Negligence of Imposed Duties, 177).  In the absence of any express declaration of this court on the very point, and in view of the fact that in recent cases the conflict of authority is still recognized (see 5 Cur. Law, 517) it seems necessary that the reasons on which the two lines of cases are supported shall be considered in order that we may now reach a conclusion which shall be satisfactory to us.

Mere negligence will not render one person liable to another for a loss which the latter would not have sustained had there been no such negligence, unless the negligence consists in some violation of a duty which the one person owes to the other.  *Dubuque Wood & Coal Ass'n v. City and County of Dubuque,* 30 Iowa, 176; *St. Louis, I. M. & S. R. Co. v. Commercial Ins. Co.,* 139 U. S. 223 (11 Sup. Ct. 554, 35 L. Ed. 154).  And, on the other hand, it is well settled that if the negligence of one person with reference to the duty owed to another concurs with an accidental cause resulting in injury to another to whom such duty is owed the negligent person must answer for the consequences as though his negligence were the sole cause of the loss.  *Savannah, F.*

& W. R. Co. v. Commercial Guano Co., 103 Ga. 590 (30 S.
E. 555); Thomas v. Lancaster Mills, 71 Fed. 481 (19 C. C.
A. 88); New Brunswick Steamboat Co. v. Tieres, 24 N. J.
Law, 697 (64 Am. Dec. 394); Tierney v. New York Cent.
& H. R. R. Co., 76 N. Y. 305; Williams v. Grant, 1 Conn.
487, (7 Am. Dec. 235); 1 Thompson, Negligence, sections
68, 73.

The real difficulty seems to be in determining to what
extent, if at all, it is necessary that the negligent party
must have been able to foresee and anticipate the result of
his negligent act in order to render him liable for the conse-
quences thereof resulting from a concurrence of his negli-
gence and another cause for which he is not responsible. In
an action on contract the party who is at fault is only liable
for such consequences as arise according to the usual course
of things from his breach, or such as may reasonably be
supposed to have been in the contemplation of both parties
at the time the contract was made as the probable result
of the breach. Hadley v. Baxendale, 9 Exch. 341; Sedg-
wick, Elements of Damage, 17. But in an action for tort,
and the present action is of that character, recovery is not
limited to the consequences within the contemplation of the
parties or either of them, but includes all the consequences
" resulting by ordinary natural sequence, whether foreseen
by the wrongdoer or not, provided that the operation of the
cause of action is not interrupted by the intervention of an
independent agent or overpowering force, and that but for
the operation of the cause of action the consequence would
not have ensued." Sedgwick, Elements of Damage, section
54. It is true that for the purpose of determining whether
the injury suffered by the party complaining was the natural
and probable result of the wrong complained of a convenient
test is to consider whether in general such a result might
have been foreseen as the consequence of the wrong, but it is
not necessary " that the injury in the precise form in which
it in fact resulted should have been foreseen. It is enough

that it now appears to have been the natural and probable consequence." *Hill v. Winsor,* 118 Mass. 251; *Schumaker v. St. Paul & D. R. Co.,* 46 Minn. 38 (48 N. W. 559, 12 L. R. A. 257). And see *Railroad Co. v. Kellogg,* 94 U. S. 469 (24 L. Ed. 256); *McPeek v. Western Union Tel. Co.,* 107 Iowa, 356; *Hoag v. Railroad Co.,* 85 Pa. 293 (27 Am. Rep. 653); *Empire State Cattle Co. v. Atchison, T. & S. F. R. Co.* (C. C.) 135 Fed. 135; *Chicago, St. P., M. & O. R. Co. v. Elliott,* 55 Fed. 949 (5 C. C. A. 347, 20 L. R. A. 582); *Miller v. St. Louis, I. M. & S. R. Co.,* 90 Mo. 389 (2 S. W. 439); *Smith v. Railroad,* L. R. 6 C. P. 21; 1 Thompson, Negligence, section 59.

Now, while it is true that defendant could not have anticipated this particular flood and could not have foreseen that its negligent delay in transportation would subject the goods to such a danger, yet it is now apparent that such delay did subject the goods to the danger, and that but for the delay they would not have been destroyed; and defendant should have foreseen, as any reasonable person could foresee, that the negligent delay would extend the time during which the goods would be liable in the hands of the carrier to be overtaken by some such casualty, and would therefore increase the peril that the goods should be thus lost to the shipper. This consideration that the peril of accidental destruction is enhanced by the negligent extension of time during which the goods must remain in the carrier's control and out of the control of the owner, and during which some casualty may overtake them, has not, we think, been given sufficient consideration in the cases in which the carrier has been held not responsible for a loss for which he is not primarily liable, but which has overtaken the goods as a consequence of the preceding delay in their transportation.

It is not sufficient for the carrier to say by way of excuse that while a proper and diligent transportation of the goods would have kept them free from the peril by which they were in fact lost it might have subjected them to some

other peril just as great. He cannot speculate on mere possibilities. A pertinent illustration is furnished by the well-settled rule with reference to deviation which is that if the carrier transports the goods over some other route than that specified in the contract or reasonably within the contemplation of the parties, he must answer for any loss or damage occurring during such deviation, although it is from a cause which would not in itself render him liable. In such a case it is said "that no wrongdoer can be allowed to apportion or qualify his own wrong, and that as a loss has actually happened whilst his wrongful act was in operation and force, and which is attributable to his wrongful act, he cannot set up as an answer to the action the bare possibility of a loss if his wrongful act had never been done. It might admit of a different construction if he could show, not only that the same loss might have happened, but that it must have happened if the act complained of had not been done." *Davis v. Garrett,* 6 Bing. 716. And see *Merchants' D. Transp. Co. v. Kahn,* 76 Ill. 520; *Crosby v. Fitch,* 12 Conn. 410 (31 Am. Dec. 745); *U. S. Exp. Co. v. Kountze,* 8 Wall. 342 (19 L. Ed. 457, 6 Cyc. 383). It is true that the analogy to the case of a deviation is denied by the courts which announce the rule of the Pennsylvania and Massachusetts cases but the distinction attempted to be made that a deviation amounts to a conversion rendering the carrier absolutely liable is too technical to be considered as persuasive. The analogy between the two classes of cases has been recognized in *Constable v. National Steamship Co.,* 154 U. S. 51 (14 Sup. Ct. 1062, 38 L. Ed. 903), and in Hutchinson, Carriers (2d Ed.) section 200.

This court has expressed itself in favor of the liability of the carrier in classes of cases very analogous to that of deviation. Where goods were shipped with the agreement that they should be carried to their destination without change of cars, and in violation of this contract the goods were unloaded at Chicago which was not their destination,

for the purpose of transporting them in other cars, and they were destroyed by the Chicago fire, it was held that the carriers were liable although the loss by fire was within a valid exemption from liability contained in the bill of lading. *Robinson v. Merchants' Dispatch Trans. Co.,* 45 Iowa, 470; *Stewart v. Merchants' Dispatch Trans. Co.,* 47 Iowa, 229. Certainly the act of the carrier in unloading the goods at Chicago, instead of carrying them through to their destination in the cars in which they were originally loaded, would not amount even to a technical conversion, nor could it have been anticipated that the result of such an act would be the destruction of the goods; nevertheless this court reached the conclusion that such a departure from the terms of the contract rendered the carrier liable for a loss for which it would not have been liable had it resulted without such departure. We think that in principle these cases support the general proposition that the wrongful act of the carrier which in fact subjects the goods to loss renders him liable for such loss although the circumstances under which it occurred could not have been anticipated. This is plainly right, for the detention due to the transfer of the goods to the other cars did increase the hazard of fire; but it is equally true in the case before us that the negligent delay increased the hazard of the loss by flood. As supporting the same view we may also refer to *Hewett v. Chicago, B. & Q. R. Co.,* 63 Iowa, 611, in which it was held that negligent delay in forwarding goods which were liable to damage by freezing rendered the carrier accountable for the loss thus resulting. In that case it is said that while the carrier is responsible for such damages only as are the proximate consequence of his own acts and is not accountable for such loss as is occasioned by the intervention of the *vis major,* yet "one of the undertakings of the common carrier is that he will not expose the property entrusted to his care to any improper hazards or extraordinary perils, and if, by his act or omission, it is exposed to perils or hazards which ordinary foresight could have ap-

prehended and provided against, he is accountable for such injury as may be occasioned by such exposure." See, also, *Whicher v. Steam Boat Ewing*, 21 Iowa, 240.

We are satisfied that the sounder reasons, supported by good authority, require us to hold that in this case the carrier is liable for the loss of and damage to plaintiff's goods, and the judgment of the trial court is therefore *reversed*.