# Wytheville.

## McConnell v. Norfolk & Western R. R. Co.

### June 27th, 1889.

COMMON CARRIER—*Liability—Connecting carrier—Special contract—Damage.*— Liability of common carrier is limited to its own route, unless the contract is to carry the goods to their ultimate destination. Such contract is not established by proof that carrier received the goods with knowledge of their destination, and named the through rate therefor. In absence of special contract to deliver the goods at a point beyond its line, the receiving carrier is not liable for loss or damage occurring to them after delivery to connecting carriers.

Error to judgment of circuit court of Washington county, rendered May 21, 1889, in an action of trespass on the case, wherein T. G. McConnell and R. A. McConnell, partners under the firm name of T. G. & R. A. McConnell, are plaintiffs, and the Norfolk and Western railroad company is defendant. The verdict and judgment being for the defendant, the plaintiffs brought the case here on writ of error. Opinion states the case.

*D. Trigg,* and *C. F. Trigg,* for the plaintiffs in error.

*Fulkerson & Page,* for the defendant in error.

FAUNTLEROY, J., delivered the opinion of the court.

This is a writ of error to a judgment of the circuit court of Washington county, rendered on 21st day of May, 1889, in an

action of trespass on the case, in which T. G. McConnell and R. A. McConnell, partners under the firm name and style of T. G. & R. A. McConnell, are plaintiffs, and the Norfolk and Western railroad company is defendant.

The material facts, as disclosed by the record, are as follows: The appellants, T. G. and R. A. McConnell, were shipping merchants, doing business at McConnell's switch, a point upon the line of the Norfolk and Western railroad, about a mile or more from Abingdon, in Washington county, Virginia. They were engaged, in the course of their business, in shipping car-loads of ivy roots, and had, previous and up to the 10th of June, 1885, loaded at McConnell's switch, and shipped as many as from 300 to 500 car-loads. Whenever they were ready to ship they notified the agent of the Norfolk and Western railroad company at Abingdon that they wanted a car placed upon their switch to be loaded by them; and, for their convenience, this was done by the said company. On the 10th day of June, 1885, the plaintiffs in error, having notified the said agent of the said company at Abingdon that they wanted a car, and having a car placed upon the said switch for their use, loaded the car with their own hands and under their own instructions, with 42,566 pounds of ivy roots, closed and secured the doors of themselves, and reported to the agent at Abingdon that the car was loaded and ready for shipment. It was the custom of the company not to issue a bill of lading for shipments from McConnell's switch until the goods were actually in transit; and on the 11th of June the car which had been loaded with ivy roots and reported ready for shipment by the appellant was taken into the train at McConnell's switch by the conductor, and reported to the agent as having been actually shipped. Thereupon, the plaintiffs in error, having complied with the customary requirement of the company for the prepayment of the freight upon 24,000 pounds of the shipment—a little over one-half of the whole freight, the excess to be paid and collected at the ultimate destination and delivery of the ship-

ment—the company issued and delivered to the plaintiffs in error a regular bill of lading, a printed form with the blanks filled up with writing, as follows " Abingdon, June 11th, 1885. Received by Norfolk and Western railroad company of T. G. & R. A. McConnell, under the contract hereinafter contained, the property mentioned below, marked and numbered as per margin (N. & W., 377. Rates from A. to New York per 100 pounds, special, 29½ cts. Charges advanced, $70 80, paid), in apparent good order and condition (contents and value unknown)—viz., one car ivy roots, 24,000. To be weighed and excess charged ratably. Laden at McConnell's. Consigned to Frank and Weiss, at New York, to be transported by the Norfolk and Western railroad to Norfolk, and there to be delivered to connecting railroad or water line, and so on by one connecting line to another, until they reach the station or wharf nearest to the ultimate destination. * * * It is mutually agreed that the liability of each carrier, as to goods destined beyond its own route, shall be terminated by proper delivery of them to the next succeeding carrier. * * * The acceptance of this bill of lading is an agreement on the part of the shipper, owner and consignee of the goods, to abide by all its stipulations, exceptions and conditions, as fully as if they were all signed by such shipper, owner and consignee. * * * This bill of lading shall have the effect of a special contract, not liable to be modified by a receipt from, or any act of, an intermediate carrier," &c.

This bill of lading was forwarded to the consignees, Frank & Weiss, in New York, by the plaintiffs in error, on the 11th day of June, 1885, the day upon which they received it. The car loaded with the ivy roots was transported to Norfolk by the Norfolk and Western railroad just as it was loaded and sealed by the plaintiffs in error, June 10th, 1885, at McConnell's switch, and was delivered by them to the connecting line— the Old Dominion steamship company, who received them and stored them in their warehouse in Norfolk on June 16th,

1885, at the Old Dominion steamship company's wharf, and the Norfolk and Western railroad company had no control over them after they were so delivered.

On the 15th of June, 1885, a representative of the firm of Frank & Weiss, the New York consignees, called at the office of the assistant general freight agent and of the notice clerk of the Old Dominion steamship company, in New York, and stated that T. G. and R. A. McConnell had shipped to them a carload of ivy roots, and that they would refuse to receive them. And immediately this information was conveyed to the agents of the Old Dominion steamship company at Norfolk, as follows:

"NEW YORK, June 15th, 1885.

" Messrs. Culpeper & Turner, Agents, Norfolk, Va.:

" Dear Sirs—We are advised by Frank & Weiss, of New York, that T. G. & R. A. McConnell has shipped them a carload of ivy roots, which they *refuse* to receive. Please notify the Norfolk and Western railroad to that effect.

" Yours truly,

" W. L. GILLAUDEN, A. S. F. A."

This was received and endorsed by Culpeper & Turner as follows:

"NORFOLK, June 16th, '85.

" R. R. To Capt. J. F. Cecil, Agent:

" This from you June 15th, N. & W. 377. Please advise disposition at once.

"CULPEPER & TURNER, Agents."

Capt. J. F. Cecil was the transportation agent of the Norfolk and Western railroad company at Norfolk, Va., and he endorsed the paper:

" R. R.    W. F. Payne, Esq.:

" This shipment covered by McConnell's W. B. No. 984, car N. and W. 377, stamp date June 15th, '85. Please get disposition as soon as possible.

"Res.,        " J. F. CECIL,

"R."

And on June 17th, '85, Capt. J. F. Cecil sent the following to the agent of the Norfolk and Western at McConnell's switch:

"June 17th, '85.

"R. R. Agent, McConnell's:

"Please note the attached is covered by your W. B. No. 984, June 11th.   Give disposition at once.   This the 2d trace.

"Res.,

"J. F. Cecil,
"R."

It was the custom of the Old Dominion steamship company to notify consignees in New York of the arrival in Norfolk of consignments which must be received at once in New York, upon their arrival, as they had no accommodations to store and protect them in New York, and to ask for orders.   Accordingly the following was sent to Frank & Weiss:

"To Messrs. Frank & Weiss, 339 Broadway, New York, June 17th, 1885:

"Dear Sirs: We are advised that one car of ivy roots, consigned to you, has arrived at Norfolk.   Please inform us when you will be ready to remove them from our wharf, that we may order them forward.   We will endeavor to meet your wishes as far as it is possible for us to do so.

"Respectfully,

(N. and W. 377.)            "W. L. Gillauden, A. G. F. A."

This was endorsed.:

"Refused to receive.

"Frank & Weiss,
"R."

Mr. R. A. McConnell, one of the plaintiffs in error was a witness, and in his testimony, on cross-examination, admitted that he was informed by E. S. Haney, the agent of the Norfolk and Western railroad company at Abingdon, about two weeks after the shipment, that the consignees refused to receive the roots, and that he had known from two to four weeks previous

to the 4th of August, 1885, that the shipment had not gone to its destination.  On the 4th of August, 1885, he received the following:

"Abingdon, Va., August 4th, 1885.

"To T. G. & R. A. McConnell:

"Gents—I am instructed by W. T. Payne, agent claims and expenses, to notify you, that unless you make disposition, within three days from the date of this letter, of the carload of ivy roots shipped by you to Frank & Weiss, at New York, June 11th, 1885, the same will be sold for charges.

"Yours, &c.,

"E. S. Haney, Agent."

He admitted that he had received notice from New York and from Mr. Haney, agent at Abingdon that the roots were in Norfolk.  That he had looked, and made diligent search, for the "*other notice* which he had received from Mr. Haney, but cannot find it."  He allowed the roots to remain in Norfolk until about the first of September, and then ordered their destination to be changed to Philadelphia, whither they were accordingly sent and delivered by his direction to Bales & Co., who reported them as totally worthless.  These are the material facts in the record.

The suit was brought to recover damages against the Norfolk and Western railroad for breach of their alleged contract, and the jury found a verdict in favor of the defendant company; which, upon motion, the court refused to set aside, and entered judgment upon the verdict.

We are of opinion that the verdict of the jury is right, and that there is no error in the judgment complained of.

The defendant in error, the Norfolk and Western railroad company, did not undertake to transport the ivy roots to their place of destination (New York), but to transport them to Norfolk, its terminus, and there to deliver them to the connecting carrier.  They were carried promptly to Norfolk, and there delivered to the connecting carrier, the Old Dominion

steamship line, in whose warehouse upon the wharf they were safely and properly stored.

Frank & Weiss, to whom they had been consigned in New York, advised of the fact that they had been shipped to them by receipt of the bill of lading which the plaintiffs in error had sent to them on the 11th of June, 1885, as early as the 15th of June, 1885, gave notice of their positive refusal to receive the consignment. This was promptly conveyed to the Norfolk and Western railroad company, and by them to the shippers, T. G. & R. A. McConnell; who took no steps or gave no orders concerning the disposition of the roots until some time in September, when they had become worthless. Even without the bill of lading or contract of shipment; the duty and responsibility of the defendant in error ended with the delivery of the roots to the connecting carrier. It is not contended by the plaintiffs in error that the delay and damage complained of occurred before the delivery by the defendant in error to the connecting carrier—in good order and prompt time; and it is distinctly proved that the injury occurred while they were in the custody of the Old Dominion steamship company, by the refusal of Frank & Weiss, the consignees in New York, to receive them, and by the knowledge of the said refusal by and failure of the consignors, T. G. & R. A. McConnell, to give any direction or to make disposition of the roots until they were worthless.

The liability of the common carrier is restricted to its own route, unless it contracts to carry the goods to their ultimate point of destination; and such contract is not established by proof that the carrier accepted the goods with knowledge of their destination and named the through rate for the same; and in the absence of a special contract to deliver the goods at a point beyond its line, the receiving carrier is not liable for a loss or damage occurring to the goods after their delivery to the connecting carrier. 3 Wood's Railway Law, 1572, and Note 3, *Hadd* v. *U. S. & C. Exp. Co.*, 36 Amer. Rep., 757;

*R. R. Co. v. Manufacturing Co.*, 16 Wall., 318; *The Ætna Ins. Co. v. Wheeler*, 3 Amer. Railway Rep., 390; *R. R. Co. v. Pratt*, 22 Wall., 123; *R. R. Co. v. Androscoggin Mills*, 22 Wall., 594.

The plaintiffs in error do not claim or pretend to have been ignorant of the limitations contained in the bill of lading, which was issued to and received by them. On the contrary, they themselves prove that they shipped hundreds—from three hundred to five hundred—car-loads of ivy roots, and had been engaged in that business, at that place, for many years: and the presumption is that they were well acquainted with the terms of the bills of lading issued by the defendants in error, and received by them in the conduct of this business of shipping ivy roots.

But we have decided this case even without reference to the bill of lading, as the evidence of the contract, containing express stipulations and limitations upon the liability of the defendant in error. There were instructions given and instructions refused by the court, and numerous exceptions taken to the rulings of the court; but we think those that were given, properly expounded the law of the case, and that those refused by the court were properly refused, because the evidence did not support or justify them.

We think the judgment in the case is right, and it must be affirmed.

Richardson, J., and Hinton, J., dissented.

Judgment affirmed.