Statement.

## Staunton.

HERRING v. CHESAPEAKE & WESTERN RAILROAD COMPANY AND OTHERS.

September 17, 1903.

Absent, Buchanan, J.*

1. APPEAL AND ERROR—*Amount in Controversy—Interest.*—Where the only ground of jurisdiction of this court is the pecuniary amount involved, and it is clear that if the party is entitled to recover at all he is entitled to recover interest on the amount claimed. from the time his demand was asserted, and there has been a decree denying the whole claim, such interest, up to the date of the decree appealed from, is to be taken into account in ascertaining the jurisdiction of this ,court.

2. COMMON CARRIERS—*Delay in Transportation—Case in Judgment.*—The evidence in this cause fails to show that the injury to appellant's stock here complained of was occasioned by delay in transportation; but if it was, a part of the delay was uncontrollable, and the greater part of it was the result of appellant's own choice.

3. COMMON CARRIERS—*Delay in Transportation—Subsequent Storm—Act of God—Proximate Cause.*—A common carrier, though guilty of negligent delay in transporting stock, is not liable for injury thereto inflicted by severe weather which overtook them in transit in consequence of the delay. The severe weather, and not the delay, is the proximate cause of the injury, and to this cause only does the law look. Severe weather is an act of God, for the consequences of which a common carrier is not liable.

4. CARRIERS—*Through Waybill.*—The fact that a car is waybilled to a particular place is no evidence of a contract for through transportation, but merely shows the destination of the car.

Appeal from a decree of the Circuit Court of Rockingham county, pronounced April 18, 1901, in a suit in chancery

*Judge Buchanan was detained at home by sickness.

wherein the Chesapeake & Western Railroad Company was the complainant, and the appellant and others were the defendants.

*Affirmed.*

The opinion states the case.

*Herring & Herring* and *George G. Grattan*, for the appellant.

*T. N. Haas* and *Sipe & Harris*, for the appellees.

CARDWELL, J., delivered the opinion of the court.

The Chesapeake & Western Railroad Company, the terminal carrier, filed its bill to enforce its lien for transportation charges on a car load of horses shipped by appellant, H. G. Herring, from Albany, Tex., to Bridgewater, Va., the amount claimed being $260.50 for transportation charges and $47.75 for feed charges, aggregating $308.25. The Norfolk & Western Railroad Company, the Southern Railroad Company, the Louisville & Nashville Railroad Company, and the Texas & Pacific Railroad Company, all connecting carriers, over whose lines the stock passed, were made defendants along with the appellant.

Appellant filed his answer to the bill, alleging that he contracted with the Texas Central Railroad Company (the initial carrier, but not a party to the suit) to transport his stock from Albany, Tex., to Harrisonburg, Va., for the rate of $250.50, and not $260.50, the rate demanded at Bridgewater; that by reason of unjustifiable delay at various points—particularly of four days, or a little more, at New Orleans—the stock was exposed to the fury of the unprecedented cold and snowstorm of February, 1899, as a result of which four of his very finest horses died, worth at the very lowest estimation $425, and he had to pay $43 in cash for feed and other things; which damages he claimed the right to set off "against any claim of the Texas Central, the Texas and Pacific, and the Louisville & Nashville Railroad Companies, or either of them, in this cause," none of which companies were making any claim against which

the set-off could be allowed, having each been paid their respective charges on the shipment of his stock by the succeeding connecting carrier, according to the usual custom of railroad companies.

. This answer, though it did not pray to be treated as a cross-bill, was, in the decree appealed from, so treated as to the Louisville & Nashville Railroad Company, against which company the blame for the delay in sending forward the stock was alleged.

The Louisville & Nashville Railroad Company answered the original bill filed by the Chesapeake & Western Railroad Company, and in its answer also answered the allegations of the answer and cross-bill of appellant, denying the alleged contract for the transportation of his stock from Albany, Tex., to Harrisonburg, Va., at the rate of $250.50; denying that there was any contract at all for the through shipment of the stock until the contract with the respondent (Louisville & Nashville Railroad Company), exhibited with its answer made at New Orleans, February 7, 1899; denying any blame or responsibility for the alleged delay of four days at New Orleans; and alleging that no damage or injury was suffered by the stock while on the respondent's line or in its pens.

Upon the hearing of the cause on the pleadings, the exhibits therewith, and the depositions of witnesses, the Circuit Court decreed in favor of the Chesapeake & Western Railroad Company against the appellant for the amount of its claim, $308.25, with interest thereon from February 18, 1899, and costs, and dismissed, with costs to the Louisville & Nashville Railroad Company, the cross-bill of the appellant setting up his claim for damages to his stock which he asked to be set off against the interest of the Texas Central, the Texas & Pacific, and the Louisville & Nashville Railroad Companies, or either of them, in the recovery by the Chesapeake & Western Railroad Company in this cause. We are asked to review and reverse the decree in so far as it denied the right of appellant to set off the

claim asserted in his answer and cross-bill against the interest of the Louisville & Nashville Railroad Company in the recovery made by the Chesapeake & Western Railroad Company and dismissing appellant's bill.

The first question presented is whether or not the amount involved in the appeal is sufficient to confer jurisdiction upon this court. It is true that the appellant, after setting out his damages to be the value of four of his best horses, worth at least $425, and $43 for feed and other things, only adds, "and other damages to the amount of $50 by reason of injury to the horses which did not die;" but, if this latter claim of damage should be disregarded because too vaguely made, the claim of damage to the amount of $468 is sufficiently made, and, if appellant was entitled to recover that amount at all, he was certainly entitled to recover interest thereon from the time his answer and cross-bill was filed at the second April rules, 1899, until paid; and the interest computed on the $468 from that date to the date of the decree appealed from, April 18, 1901, would, together with the $468, amount to more than the sum necessary to confer upon this court jurisdiction.

It appears that the appellant, who was then living in Texas, and desiring to move to Bridgewater, Va., his future home, delivered a car load of horses to the Texas Central Railroad Company at Albany, Tex., on or about January 31, 1899, for shipment to Bridgewater, Va., he to accompany and care for the stock en route, the initial carrier furnishing him free transportation over its line from Albany to Cisco, Tex., where the stock was turned over to the connecting carrier, the Texas & Pacific Railroad Company, which latter carrier delivered the stock at New Orleans on February 3, 1899. When the stock arrived at New Orleans, the appellant, not having a through rate of freight thereon to Bridgewater, Va., sought to obtain such a rate from the Louisville & Nashville Railroad Company, and upon being told that the company had no through rates to

Bridgewater, Va., but would send forward the stock on the regular charges of freight on stock in the car-load lots to the point of connection with the Southern Railway, where a through rate might be obtained, appellant chose to wait at New Orleans for an offer from the Louisville & Nashville Railroad Company of a through rate, which, as he was made to understand, would require some time to arrange, and his stock was unloaded and placed in the pens of the railroad company. As soon as the company arranged with the connecting carriers for a through rate on the stock to Bridgewater, Va., it assumed the prior charges due to the Texas Central and the Texas & Pacific Railroad Companies, amounting to $133, entered into the contract with the appellant of February 7, and sent forward his stock that afternoon. After the stock had left the line of the Louisville & Nashville Railroad Company, it encountered the severe cold and snowstorm which prevailed from about the 10th to the 18th of February, 1899. During the time that the stock was delayed in New Orleans, as well as throughout the journey from Albany, Tex., to Bridgewater, Va., it was in the immediate charge of the appellant, and he was furnished free transportation by the several railroad companies for that purpose. He first made his claim to damages in this suit, founded upon a letter from the general freight and passenger agent of the Texas Central Railroad Company, dated prior to February 3, 1899, the date of the shipment of his stock, offering him a through rate to Harrisonburg, Va.; but this offer, as the court below held, he never accepted, and, on the contrary, entered into a contract with that company January 31, 1899, for the shipment of the stock to Cisco, Tex., where it was to be turned over to the connecting carrier, the Texas & Pacific Railroad, the contract specifying the charge of freight from Albany to Cisco, Tex., to be $23, the shipper to release the initial carrier from any and all liability for injury to the stock after it left its own road.

It is shown that the fact that a car of live stock is waybilled to a particular place is no evidence of a contract for through transportation, but merely shows the destination of the car. *McConnell* v. *N. & W. Ry. Co.*, 86 Va. 248, 9 N. E. 1006.

It further appears by uncontradicted testimony that when appellant went to the agent of the Louisville & Nashville Railroad Company having in charge at the time the department of the road's management where contracts for the through shipment of this stock had to be made to see about rates, and this agent told him that he had no through rate to Bridgewater, but would let the stock go forward to some junction point on the line of the Louisville & Nashville Railroad Company to wait there for the rate, appellant refused to go forward, saying he preferred to wait there, where his stock was well cared for, until the rate was obtained. Had this proposal been accepted by appellant, his stock would have reached Calera, Ala., the junction with the Southern Railway, at least two days earlier, which, with the necessary delay at New Orleans for feeding and resting, would have about removed the cause of delay in New Orleans of which he complains. The appellant, nowhere in his answer and cross-bill, alleges that the stock was injured or weakened by standing in the pens at New Orleans, and it is shown in the evidence that the stock was in good condition when it left the pens of the Louisville & Nashville Railroad Company at New Orleans. No witness—not even the appellant himself, who was with the stock all the time, as we have said—testifies that the stock had been in the slightest degree injured, damaged, or weakened when it left New Orleans. Therefore, it is manifest that the injury to his stock, of which he complains, was not traceable to the delay at New Orleans, a part of which was, as we have seen, uncontrollable, and the greater part of which was the result of his own choice.

This brings us to the remaining question—whether or not the Louisville & Nashville Railroad Company can be held liable

to appellant for damages resulting to his stock from the severe
snowstorm following the departure of the stock from New Or-
leans on the afternoon of February 7. The snowstorm, en-
countered by the appellant about the 11th or 12th of February,
is shown to have been the severest, both as to low temperature
and the depth of the snow, that had been experienced in
twenty-seven years previous, causing to appellant at least two
days' delay at two or more points before reaching Bridgewater,
Va., of which delay he does not complain.

"A common carrier assumes all risks except those caused by
the act of God and the public enemy. One of the instances al-
ways mentioned by the elementary writers of loss by the act of
God is the case of loss by flood or storm. Now, when it is
shown that the damage resulted from this cause, immediately
he is excused." *Railroad Company* v. *Reeves*, 10 Wall. 176,
19 L. Ed. 909, and authorities cited, among which is *Denny* v.
*N. Y. Cent. R. Co.*, 13 Gray, 481, 74 Am. Dec. 645. In that
case it was shown that the defendants were guilty of a negligent
delay of six days in transportation, by reason of which the ship-
ment was overtaken by flood in the Hudson river, and for dam-
ages resulting to the goods shipped the action was brought, the
contention of the plaintiff being that the defendant was liable
because of the negligent delay of six days in transportation,
whereby the goods were overtaken by the flood; but the court
held that, the flood being the proximate cause of the injury,
and the delay in transportation the remote cause, the plaintiff
was not entitled to recover.

In the examination of the appellant in his own behalf in this
case he was asked: "As I understand your contention in this
case, so far as the question of damages is concerned, it is based
on the idea that the delay on the route before you struck the
storm caused your stock to be exposed to the snowstorm and
cold that commenced about the 11th or 12th of February,
1899, as a result of which exposure they contracted pneumonia

or other forms of cold, and died, and that, but for such antecedent delay, they would have reached Bridgewater before the storm, and been safe?" His answer was, "Yes." Here he brings his case clearly within the rule laid down in *Railroad Co.* v. *Reeves* and *Denny* v. *N. Y. Cent. R. Co.*, *supra*, that the storm is to be regarded as the proximate cause of the injury and the delay in transportation the remote cause. Therefore, even if the Louisville & Nashville Railroad Company could be held responsible for the delay at New Orleans, which, as we have seen, the evidence does not warrant, it cannot be held liable to the appellant in damages resulting from injury to his stock, the proximate cause of which was exposure to the severe storm and cold that commenced after the stock had departed from New Orleans.

"The law refers an injury to the proximate cause, and not to the remote cause. A man guilty of negligence is not responsible for all the consequences that may or do flow therefrom, but only for such consequences as a prudent and experienced man, fully acquainted with all the circumstances which in fact exist at the moment, could have foreseen or reasonably anticipated." *Fowlkes* v. *Southern Ry. Co.*, 96 Va. 742, 32 S. E. 464; *Connell's Ex'rs* v. *C. & O. R. R. Co.*, 93 Va. 57, 24 S. E. 467, 32 L. R. A. 792, 57 Am. St. Rep. 786.

Upon the whole case we are of opinion that the decree appealed from should be affirmed.

*Affirmed.*