ATLANTIC COAST LINE RAILROAD COMPANY, PLAINTIFF IN ERROR, v. H. F. DEXTER AND S. B. CONNER, PARTNERS DOING BUSINESS AS DEXTER & CONNER, DEFENDANTS IN ERROR.

EVIDENCE—RAILROAD LIVE STOCK CONTRACTS—ESTOPPEL—LIMITATION OF VALUE OF ANIMALS IN CONTRACTS FOR CARRIAGE OF LIVE STOCK—BURDEN OF PROOF—DEMURRER TO EVIDENCE.

1.  The fact of the delivery of freight to a common carrier for carriage may be proven by oral testimony notwithstanding the existence of a receipt or bill of lading given by the carrier for such freight. Such receipt or bill of lading does not fall within the best evidence rule as proof of such fact of delivery.

2.  The settled rule in the United States is that an acceptance by a shipper or his agent of a receipt or bill of lading containing a limitation of the carrier's liability is binding on him when the limitation is not illegal or unreasonable. And that it is not essential to the validity of such a limitation that it be shown that the shipper was aware of it,

or that he had read it, or that it had been explained to him, or his attention called to it, provided the carrier made use of no improper means to prevent his noticing or objecting to it. And that every shipper is conclusively presumed, in such a case, to have read and assented to the provisions of the receipt or bill of lading given him, whether he in fact assented or not, and he is estopped from gainsaying or repudiating it.

3. Where the shipper of live stock, or his agent, assumes to take care of the stock during its transportation, and it is found to be injured on arrival at its destination, the burden of proof, under the Florida statute, Chapter 4071, Laws of 1891, is upon the shipper plaintiff to prove, at least, that the injury to such stock was caused "by the running of the locomotives, or cars, or other machinery of the defendant company," before the burden shifts to the defendant carrier to show that the injury complained of was not the result of any negligence on its part.

4. Provisions in contracts for the carriage of live stock limiting the amount for which the carrier is to be liable in any event for the complete loss or injury to such stock while in its charge, are universally recognized to be reasonable, valid and binding on the parties.

5. A demurrer to evidence is properly overruled unless it sets forth all of the evidence intended to be admitted thereby.

This case was decided by Division B.

Writ of Error to the Circuit Court for Suwannce County.

STATEMENT.

The defendants in error, hereinafter referred to as the plaintiffs, sued the corporate plaintiff in error, referred to hereafter as the defendant, in the Circuit Court of Suwannee county in an action of trespass on the case and re-

covered judgment for $235.13, and the defendant below brings the case here for review by writ of error. The declaration is as follows: "And now comes the said plaintiffs H. F. Dexter and S. B. Conner, partners doing business under the style and firm name of Dexter & Conner by Rees & Rees, their attorneys, and complains of the said defendant the Atlantic Coast Line Railway Company, a railway corporation doing business in and under the laws of the State of Florida, which has been summoned to answer the plaintiffs that on the 9th day of February, A. D. 1904, the plaintiffs delivered to the Central of Georgia Railway Company at Atlanta, Georgia, twenty-two mules and three horses in good condition to be shipped to plaintiffs at Live Oak, Suwannee county, Florida, via the G. S. & F. (R'y) and A. C. L. (R'y), and the same were received by the said Central of Georgia Railway Company for transportation for the usual rates and charges for such shipments, and the said defendant then owned and operated a line of railway between Jasper, in Hamilton county, Florida, and Live Oak, in Suwannee county, Florida, and was then engaged in the business of a common carrier for hire and reward of both passengers and freights between said points last named and did between the 9th and 13th of February, A. D. 1904, received from the Georgia Southern & Florida Railway Company the said mules and horses for transportation to Live Oak, Florida, and delivery to plaintiffs and it then became and was the duty of said defendant to and it then undertook to safely keep, transport and deliver said horses and mules to the plaintiffs but the defendant, its agents and servants not regarding its duty as a common carrier, acted so carelessly and negligently in the operation of the cars in which said stock were being transported that by reason thereof one of said mules was bruised, crushed,

wounded, injured and hurt so that it died from such injury and was wholly lost to plaintiff, whereby plaintiff was injured and damaged to the sum of one hundred and fifty-seven dollars and fifty cents, the value of said mule, and the further sum of two dollars and sixty-three cents freight paid by plaintiff to defendant on said mule to plaintiffs damage in the sum of three hundred dollars.

And for that whereas on or about the first of November, A. D. 1902, the plaintiff shipped from Morristown, Tennessee, over the Southern Railway, a car load of mules and horses billed to Live Oak, Florida, and the said Southern Railway Company then received said car load of stock from plaintiff in good condition for transportation and shipment as a common carrier, and the said defendant was then and is yet the owner and operator of a line of railway between Savannah, Georgia, and Live Oak, Florida, and was engaged in the business of a common carrier of passengers and freight over its said line of railway for hire and reward, and did then receive at some point on its said line of railway unknown to plaintiffs said carload of horses and mules then and there undertaking to safely keep and transport and deliver the same to plaintiff at Live Oak, Florida, but the defendants, its agents and servants not regarding its duty as a common carrier, acted so carelessly and negligently in the operation of the car on which said stock were being transported that by reason thereof one of the mules composing said car load of horses and mules then and there the property of the plaintiffs was bruised, mashed, crushed, injured and hurt, whereby plaintiffs suffered damage and loss in the value of said mule to the extent of seventy-five dollars, wherefore plaintiffs sues and claims damage in the sum of three hundred dollars."

To this declaration the defendant demurred. The court overruled the demurrer, but as the assignment of error predicated on this ruling is expressly abandoned here it is unnecessary to mention it further.

The defendant filed two pleas to the declaration as follows:

"1st. Not guilty.

2nd. The defendant says that the injuries complained of in the two counts in said declaration to have been sustained by the stock of plaintiff were caused solely by the inherent viciousness of the stock and animals being shipped by the plaintiffs, and not otherwise."

Upon the issues thus made the trial was had.

*John E. Hartridge* and *J. B. Johnson,* for Plaintiff in Error.

No appearance for Defendants in Error.

TAYLOR, J., *(after stating the facts.)* To H. F. Dexter, one of the plaintiffs, as a witness on his own behalf the following question was propounded: "Did you on or about the 9th day of February, 1904, deliver to the Central of Georgia Railroad Company a car load of horses and mules?" The defendant objected to this question on the ground that the written receipt or bill of lading for the stock is the best evidence of the delivery of same to the railroad company. The objection was overruled and the question allowed, which ruling is the second error assigned. The witness answered that "the Brady Union Stock Yards delivered this carload for me. We usually had them to deliver the stock." There was no error in permitting this question. The receipt or bill of lading, if any, given by the railroad company for freight delivered to it

for carriage, while strong evidence, is no better evidence of the abstract fact of such delivery than the testimony of a credible witness who knows of such delivery. No receipt or bill of lading may be issued at all, yet the fact of such delivery may exist without it, and may be testified to independently of a receipt or bill of lading for the goods delivered. Boykin et al. v. State, 40 Fla. 484, 24 So. Rep. 141.

After the defendant had introduced in evidence without objection the two "Live Stock Contracts" or bills of lading, under which it was admitted the railroad company received the stock for carriage and shipment, and had made H. F. Dexter, one of the plaintiffs, its witness, and had proved by him that he had received and ridden on a pass issued with such contract, the plaintiffs counsel on cross-examination of said Dexter propounded to him the following question: "Were you acquainted with the terms of this bill of lading, and did you agree to the same?" To this question the defendant objected on the grounds: (1) The bill of lading has already been admitted by them to be the contract under which said stock was shipped. (2) The plaintiffs accepted the benefits of the free pass under the contract; and, (3) The railroad companies were induced to accept the said stock by the acquiescence of the plaintiffs to the terms of the said bill of lading, hence they are estopped to deny the acceptance of same. These objections were overruled and the question allowed, which ruling is assigned as error. The witness answered as follows: "I didn't know anything about the terms of this bill of lading, neither did I agree to the same. Brady Union Stock Yards took the bill of lading. Usually they ship the stock, take the bill of lading, and then the bill of lading and pass are sent to the hotel and I know nothing about it until the bill of lading

and pass get to the hotel." The court below erred in this ruling for various reasons.

The rule is quite generally settled in the United States that an acceptance by a shipper *or his agent* of a receipt or bill of lading containing a limitation of the carrier's liability is binding on him when the limitation is not illegal or unreasonable. And that it is not essential to the validity of such a limitation that it be shown that the shipper was aware of it, or that he had read it, or that it had been explained to him or his attention called to it, provided the carrier made use of no improper means to prevent his noticing or objecting to it. And that every shipper is conclusively presumed, in such a case, to have read and assented to the provisions of the receipt or bill of lading given him, whether he in fact assented or not. 5 Am. & Eng. Ency. Law (2nd ed.) pp. 293 and 294, and numerous authorities there cited. The stock contract or bill of lading here inquired about had been admittedly received by the shipping plaintiffs, had been accepted and *signed by their shipping agent,* the Brady Union Stock Yard, and the plaintiff had admittedly received and ridden upon a free pass issued to him by the railroad company as a part of the contract of shipment, and no obstacles were shown to have been thrown in his way to prevent his fully familiarizing himself with the terms of the contract and each and every of its conditions. Under these circumstances it made no difference whether the plaintiffs ever expressly assented to the contract or not, or even read, or knew of its terms and conditions, they are fully bound thereby, and are estopped from gainsaying or repudiating it.

What is here said disposes also of the assignment of error predicated upon the ruling of the court in permit-

ting one P. T. McGriff, a witness, and shipping agent for the plaintiffs, to testify to his non-assent to, and want of knowledge of the terms and conditions of the second Live Stock Contract or bill of lading involved in the case.

The court gave to the jury the two following charges:

(1) "To plaintiffs declaration in this case the defendant has filed two pleas, the first is a plea of general issue, and the second is a special or affirmative plea. (Here the court read the pleas to the jury). Under the first plea it devolves upon the plaintiffs to prove their case by a preponderance of the evidence. If you believe from the evidence that this stock sued for was delivered to the railroad company in good condition, and that when same reached Live Oak it was injured and damaged as alleged in plaintiffs declaration then the court instructs you that the plaintiffs have made out a *prima facie* case, and are entitled to recover unless the defendant can show that said stock was injured by its own inherent viciousness, or from some other cause not the result of their negligence and for which it is not responsible."

(2) "If you find for the plaintiffs you should fix their damage at the value of said stock after it had reached Live Oak had same been uninjured." Both of these charges are erroneous. The first is erroneous because in the admitted contract of shipment between the parties it is expressly provided that the shipping plaintiffs or their agent assume to take care of the stock during its transportation; in such cases the great weight of authority holds that when the shipper assumes to take care of the stock during the transportation, he has the burden of proving that the loss was the result of the *defendant company's negligence*, whether the negligence consists in failing to furnish proper cars or in the transportation of the

stock. The reason for this rule is thus given by ELLIOTT, C. J., in Terre Haute & L. R. Co. v. Sherwood, 132 Ind. 129, 31 N. E. Rep. 781, S. C. 32 Am. St. Rep. 239: "The effect of this agreement is to place the animals in their (the shippers) immediate custody during transportation. Their agent is to care for them and is to do the things expressly specified. The animals were not, therefore, in the exclusive custody and control of the carrier, so that the case is not within the reason of the rule that the carrier, and not the shipper, has the burden of proof because the former has all the means of explanation and excuse at hand." The general rule referred to by Judge ELLIOTT, to which the case of a shipper assuming the care of live stock during transportation forms an exception, is the same rule that is discussed in Savannah, F. & W. Ry. Co. v. Harris, 26 Fla. 148, 7 South. Rep. 544. 5 Am. & Eng. Ency. Law (2nd ed.) p. 472, and cases cited in note 2 and p. 359 text. Our statute, Chapter 4071, Laws of 1891, does not militate against this rule, since it does not cast the burden of proof upon, or presume negligence against, the carrier until it is shown, at least, that the injury complained of was caused *"by the running of the locomotives, or cars, or other machinery of the defendant company."* In the case of the transportation of live stock, with the undisputed special contract before the court between the parties, admitted in this case, providing for the carriage of these animals it was error for the court to charge the jury in effect that if the animals were in good condition when delivered to the railroad company and were found to be injured on their arrival at their destination they could find for the plaintiffs unless the defendant company could show that the injury was not caused by its negligence, or was caused by the innate viciousness

of the animals themselves. The burden was upon the plaintiff shippers of proving at least that the injury to the animals complained of resulted from the operation by the defendant company of its cars, or in the discharge of some other duty that devolved upon it under its contract of carriage with the shipper.

The second of said charges is erroneous because it entirely ignores the provision in the admitted contract between the parties by which, in consideration of the reduced rates at which the carriers undertook to convey the freight, the amount of damages for which the companies were to be responsible for the complete loss or injury to such stock was limited in any event to not more than seventy-five dollars per head. The validity of such provisions in freighting contracts between shippers and carriers, particularly for the carriage of live stock, is almost universally recognized, and they are binding between the parties. 5 Am. & Eng. Ency. Law (2nd ed.) p. 328, *et seq.* and authorities there cited. Notwithstanding this the court in this charge instructs the jury that they can assess the damage at the full value of the animals in an uninjured condition at their point of destination at Live Oak.

At the close of the evidence the defendant demurred to the evidence, but the court overruled such demurrer. This demurrer was defective in not stating all the evidence admitted thereby and was, therefore, properly overruled. Mugge v. Jackson, 50 Fla. ..., 39 So. Rep. 157. In view of the evidence disclosed to us in the record here, the court erred in denying the defendant's motion for new trial on the ground that the verdict was not supported by the evidence. The plaintiffs failed to show when, where or how the injury occurred to his property, and failed utterly to prove any fact from which it could be presumed

even that such injury occurred while such stock was in the hands of the defendant company. This being true, no case was made out against the defendant upon which a recovery could legally be had.

For the errors found the judgment of the court below is reversed at the cost of the defendant in error.

HOCKER and PARKHILL, JJ., concur.

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.