# CHARLESTON

## ROY *v.* CHESAPEAKE & OHIO RY. CO.

Submitted February 19, 1907.    Decided March 26, 1907.

1. CARRIERS—*Loss of Freight—Connecting Lines.*
   In the absence of a special contract, a railroad company, by receiving goods for transportation over its own line and other lines therewith connected, is only bound to carry the goods over its own line, and deliver them safely to the next connecting carrier. (p. 617.)

2. SAME—*Extending Liability.*
   A contract whereby the liability of the company is sought to be extended beyond such carriage and delivery will not be inferred from loose and doubtful expressions, but must be established by clear and satisfactory evidence. Taking a through fare on the receipt of the goods does not establish such liability. (p. 619.)

Error to Circuit Court, Fayette County.

Action by M. L. Roy against the Chesapeake & Ohio

Railway Company. From a judgment before a justice, defendant appeals, and, from a judgment for plaintiff in the circuit court, it brings error.

*Reversed. Remanded.*

Simms & Enslow, for plaintiff in error..

M. W. Ryan and Jared L. Wamsley, for defendant in error.

Brannon, Judge:

M. L. Roy brought an action before a justice against the Chesapeake & Ohio Railway Company, which went to the circuit court of Fayette county by appeal, and was there tried by a jury, and verdict and judgment went against the railroad company, and it sued out a writ of error.

A question is raised as to bill of exceptions No. 2, whether it brings the evidence before this Court. We think it is sufficient to do so. We need not discuss it, as the principles touching bills of exception have been amply stated in prior decisions of this Court. We must not be over critical and rigid in this matter, and thereby turn out of this Court those seeking redress from erroneous decisions.

The action is to recover damages for the loss of a box and trunk containing articles delivered to the railroad agent for shipment from Sewell Station, on the Chesapeake & Ohio railroad, to a point in Randolph county not on its line. On the trial it was agreed by the plaintiff that two absent witnesses would, if present, testify that the Kanawha & Michigan Railroad Company received from the Chesapeake & Ohio Railway Company the box and trunk, and that they were delivered by the Chesapeake & Ohio Railway Company to the Kanawha & Michigan Railroad Company at Gauley Junction in good order, and were delivered by the Kanawha & Michigan to the Baltimore & Ohio Railroad Company at Point Pleasant. This agreement was read to the jury; but afterwards the plaintiff moved to strike it out as irrelevant and not material to the issue. This evidence was given to show that the loss occurred, not on the line of the Chesapeake & Ohio railway, but on the Baltimore & Ohio. Is the Chesapeake & Ohio Company liable for loss of the goods

occurring after they left its line? The Supreme Court of the United States in *Michigan C.* v. *Mineral Springs*, 16 Wall 324, said that "the rule that holds the carrier only liable to the extent of his own route, and for the safe storage and delivery to the next carrier, is, in inself, so just and reasonable that we do not hesitate to give it our sanction."

"In the absence of a special contract, a railroad company by receiving cattle for transportation over its own line and other lines therewith connected is only bound to carry the cattle over its own lines and deliver them safely to the next connecting carrier. A contract whereby the liability of the company is sought to be extended beyond such carriage and delivery will not be inferred from loose and doubtful expressions, but must be established by clear and satisfactory evidence. Taking a through fare on the receipt of the cattle does not establish such liability." *Myrick* v. *Michigan Central*, 107 U. S. 102. "In the absence of special agreement to extend its liability beyond its own line such liability will not attach, and such agreement will not be inferred from doubtful expressions of loose language, but must be established by clear and satisfactory evidence." *Pennsylvania R. R. Co.* v. *Stewart*, 155 U. S. 333. "Liability of common carrier is limited to its own route, unless the contract is to carry the goods to their ultimate destination. Such contract is not established by proof that carrier received the goods with knowledge of their destination, and named the through rate therefor. In absence of special contract to deliver the goods at a point beyond its line, the receiving carrier is not liable for loss or damage occurring to them after delivery to connecting carriers." *McConnell* v. *Norfolk & Western R. R. Co.*, 86 Va. 248. Likewise is *Herring* v. *C. & O.*, 101 Va. 778. Many, many decisions so hold. 4 Elliott on Railroads, section 1432, says: "As a general rule, no carrier is bound by law to accept and carry goods beyond the terminus of its own line. In the absence of any agreement, either express, or clearly implied, for transportation beyond its own line, the common law duty of an independent carrier is performed by safely transporting the goods over its own line and delivering them to the consignee or connecting carrier, as the case may be. If, in such a case the goods are to be delivered by the initial carrier to a

connecting carrier for further transportation, the former is considered as a *forwarding agent* rather than a carrier as to such further transportation, and is not liable for the default of subsequent carriers." 6 Cyc. 480, cites many of such cases. So does 6 Am. & Eng. Ency. L. (2nd Ed.) 615. Hutchinson on Carriers, third edition, section 231 (section 149) after saying that the English rule is different, says: "English rule denied in majority of states. On the other hand, the majority of our courts have pronounced with equal emphasis against the rule as unjust to the carrier, and as unnecessary upon any grounds of public policy, and have held that, in the absence of any other contract than such as is generally to be implied from the acceptance of the goods for carriage, the obligation of the carrier extends only to the transportation to the end of his route and a delivery there to the next succeeding carrier to further or complete the transportation. In order to be bound further there must be a positive agreement, either expressed or implied, extending the liability, and the burden of proof will be upon the shipper to prove that such agreement was made." In such a matter, if we have any doubt, as we have not, we should follow the National Supreme Court. The rule is just. Why should one man or corporation be liable for the negligence of another where there is no agreement to be so? There is no evidence to prove any contract to carry beyond the line of the Chesapeake & Ohio railroad, no payment of freight for carriage, indeed, no freight at all paid. As the evidence stricken out tended to prove a full defence under the law above given, the striking out of it is error. Even if the agent has made any contract for carriage over other lines, it could not bind the company in the absence of proof of special authority to so contract. 4 Elliott on Railroads section 1406, says that "a mere station agent will not, under ordinary circumstances, be presumed to have authority, to bind the company by contract to carry freight beyond its own line." Much authority so holds. Vol. 1, Hutchinson on Carriers, third edition, section 241 (section 152a) reads thus: "Under the English rule and the cases adopting it, it is held that the agent authorized to receive the goods for carriage has implied authority to bind his principal by a contract for through carriage; but under the American rule, it is held that, while

the general freight agent of a railroad may have such authority, it will not be implied in the case of local freight agents from their general authority to receive and receipt for goods offered for transportation over the carrier's road; and the mere fact that a through rate of freight is collected or that the goods are billed for through shipment will be insufficient to support an inference that he has such authority." To charge the company it is absolutely necessary, not only that there be a special contract for liability for loss on other lines of railroad, but also that the agent has power to make such contract. There is no shadow of evidence to show such authority in the agent. But, in fact, there is no shadow of evidence going to show that the agent made any such contract.

There was evidence tending to show that some of the goods belonged to a woman, who was not his wife or relative; but Roy's housekeeper. Evidence of the plaintiff as to the total value of all the goods in the box and trunk included these goods. The defendant asked, but was refused, an instruction that the plaintiff was "only entitled to recover the value of the goods owned by him, and not for goods of any other person shipped in his name." The refusal of this instruction is error.

We reverse the judgment, set aside the verdict, and remand the case for a new trial according to the principles above given.

*Reversed. Remanded.*