## MISSOURI, K. & T. RY. CO. v. PETERS.

No. 2508.    Opinion Filed April 4, 1913.

(131 Pac. 525.)

1. CARRIERS—Live Stock Shipment—Negligence—Presumptions. In an action against a terminal carrier for damage to a shipment over connecting lines, the rule, "that proof that the shipment was in good condition when delivered to the initial carrier and in damaged condition when received from the terminal carrier, raises a presumption of negligence against such terminal carrier which places the burden on it to prove that such damage did not occur on its lines," does not apply in shipments of live stock where the shipper or his agent accompanies the shipment under a contract to look after and care for the stock. In such cases the shipper is in as good position as the carrier to know where the damage occurred, and the law places the burden upon him to show where it occurred.

· 2. SAME—Negligence of Initial Carrier—Liability of Terminal Carrier. In the absence of any joint traffic arrangement, whereby connecting carriers act in partnership or as the agent of one another in the handling of freight, the terminal carrier is not liable for damages sustained on the lines of the initial carrier.

(Syllabus by Harrison, C.)

*Error from Tulsa County Court;*
*N. J. Gubser, Judge.*

Action by Carrie M. Peters against the Missouri, Kansas & Texas Railway Company. Judgment for plaintiff, and defendant brings error.· Reversed.

*Clifford L. Jackson, W. R. Allen,* and *M. D. Green,* for plaintiff in error.
*J. S. Severson,* for defendant in error.

Opinion by HARRISON, C. This was an action by Carrie M. Peters against the Missouri, Kansas & Texas Railway Company for damages done to a shipment of live stock and some vegetables and canned fruit shipped in the same car. The plaintiff sued for $187 and obtained judgment for $130. The items

of damage were: , Loss of one horse, $125; 25 bushels of potatoes, valued at $25; 25 cans of fruit, $5; one overcoat, $25; one gun, $4. As to what items were covered by the other $3 to make out $187 does not appear from the bill of particulars. Plaintiff sued on a contract by which the defendant agreed to transport the goods in question from Kansas City, Mo., to Broken Arrow, Okla., at the rate of 41 cents per hundred, and alleged that defendant undertook said shipment as the connecting carrier of the initial carrier, Chicago & Northwestern Railway Company and Chicago, St. Paul, Minneapolis & Omaha Railway Company; that the goods were in good ·condition when delivered to the initial carrier, but that one of the horses was dead, the canned fruit and vegetables frozen, and overcoat and gun missing, when delivered to consignee at destination. The railway company appealed from the judgment upon eleven specifications of error which are discussed in the brief under four separate heads. It developed at the trial that the shipment in question started at McHenry, Ill., billed to Broken Arrow, Okla., and was handled by three different carriers, namely, Chicago & Northwestern Railway Company, the initial carrier, from McHenry, Ill., to Council Bluffs, Iowa, and from Council Bluffs over the Burlington route to Kansas City. From Kansas City to Broken Arrow, Okla., by the Missouri, Kansas & Texas Railway Company. The initial contract was made at McHenry, Ill., with the Chicago & Northwestern, in which it was agreed that the goods would be delivered to the shipper at Broken Arrow, Okla. The shipment was received on the Burlington route at Council Bluffs and from there carried to Kansas City under the initial contract, but at Kansas City the Missouri, Kansas & Texas Railway Company made a new contract for the shipment over its lines from Kansas City to Broken Arrow, and the suit was brought on this last contract.

The evidence fails to show any violation of this contract on the part of the defendant carrier, and fails to show any negligence further than a possible concurring negligence as to the goods, on the part of defendant, from which the alleged damages

resulted. The cause was tried and the verdict evidently rendered upon the theory that the goods being delivered in good order to the initial carrier, and being in a damaged condition when delivered to the consignee by the terminal carrier, raised a presumption that the damage was sustained on the lines of the terminal carrier, and placed the burden upon such carrier to overcome such presumption. The plaintiff contended that such was the rule of law, and the court, at plaintiff's request, instructed the jury to the effect that "the burden of proof is on such connecting carrier to rebut such *prima facie* presumption of delivery in good order or to show that the damages or loss occurred before it reached its line." As a general proposition of law, this instruction is correct in shipments over connecting lines where it is shown that there exists a partnership or joint undertaking on the part of such connecting lines to deliver freight received by either line; but in the case at bar there is nothing in the record which tends to show any agreement or partnership or contract to act conjointly upon the part of defendant company with the initial carrier. In fact, the record shows conclusively that no such relation existed, and that, before the defendant company took charge of the shipment, it required the plaintiff to sign a new contract of shipment limiting its liability to its own lines.

And, aside from this, there is a clear and well-defined exception to the general rule, as to which the authorities are practically in harmony, viz., that in a shipment of live stock accompanied by the shipper or by an agent, as was true in the case at bar, the presumption under the general rule is removed, and the burden is upon the shipper to show which line was guilty of negligence. This rule is based upon the very sound theory that the shipper being with the stock, and having under definite contract assumed complete control over the management, watering and feeding of the stock and caring for them, is supposed to know where the negligence occurred, and the law places the burden upon him to show where it occurred. The

rule is announced in 3 Hutchinson on Carriers, sec. 1357, as
follows:

"But where, as is frequently the case, the shipper accompanies his live stock for the purpose of caring for it during the transportation, the same rule as to the burden of proof is held not to apply. The stock is not in the carrier's exclusive control or custody, nor are his means of information superior to those of the shipper, who is in a position to know as well as the carrier of the causes which produced the injury. In order, therefore, that the shipper who accompanies his live stock may recover for injuries received by it during the transportation, he must not only show that he himself was free from negligence, but that the injuries were caused by a breach of duty on the part of the carrier."

This rule is recognized and followed in *Bartelt v. Ore. R. & N. Co.* (1910) 57 Wash. 16, 106 Pac. 487, 135 Am. St. Rep. 959; *St. L. & S. F. R. Co. v. Wells* (1907) 81 Ark. 469, 99 S. W. 534; *Atl. Coast Line R. Co. v. Dexter* (1905) 50 Fla. 180, 39 South. 634, 111 Am. St. Rep. 116; *Wilke v. Illinois Central R. Co.* (1911) 153 Iowa, 695, 133 N. W. 746; by the same court in *Mosteller v. Iowa Central Ry. Co.* (1911) 153 Iowa, 390, 133 N. W. 749; *Illinois Central R. Co. v. Word*, (1912) 149 Ky. 229, 147 S. W. 949; *Texas & Pac. Ry. Co. v. Scroggin & Brown* (1905) 40 Tex. Civ. App. 526, 90 S. W. 521. See, also, authorities cited in notes to *Atl. C. L. Co. v. Riverside Mills*, 31 L. R. A. (N. S.) 111, 112.

Aside from the rule in the foregoing authorities, the record in the case at bar shows conclusively that the horse in question was not in good condition, but had been severely injured before the shipment was received by defendant. When plaintiff made out a claim for the damages sustained to the shipment in question, her husband and appointed agent made affidavit, as to where and how the shipment was damaged, which in part is as follows:

"At a point about 25 miles before reaching Council Bluffs, one horse got down, and affiant was unable to get him up. Affiant further states that the conductor of said train was duly notified and requested to stop said train, and allow him to

get said horse up, all of which he refused to do. As a result of being down and trampled upon said horse died in transit, and was removed from said car at Muskogee. Affiant further states that while at Council Bluffs said car containing said goods was in a collision with another car and as a result the door of car No. 10602 was knocked off, and said door was not replaced for a period of about two hours, thus exposing the contents of the car to the weather and allowing the same to freeze, resulting in a total loss of 25 bushels of potatoes of the value of $25 and 25 cans of fruit of the value of $5."

This witness testified at the trial as follows:

"Q. What did you do, didn't you swing him to the top of the car? A. Not until I reached Council Bluffs. Q. He couldn't stand up by himself, could he? A. No. Q. And he was in that condition when delivered to the M., K. & T. R. R.? A. Yes, sir. Q. And he died before he got to Muskogee? A. Died at Muskogee in the yards. Q. From injuries received on the Chicago Northwestern R. R.? A. Yes, sir."

The testimony further shows that the weather was very cold during the route; that the car door was bursted open at Council Bluffs, and the contents of the car exposed to the weather for about two hours before the door was nailed up. As to what was done in reference to closing the car door, the same witness testified:

"Q. Now, the trainman asked you if it would be satisfactory to nail the door on with the cleats the way he did? A. Yes, sir. Q. And you said it would be in order not to be delayed? A. Yes, for I didn't want to be delayed in the cold. Q. And you accepted the car the way they fixed it in order to go on? A. Yes, sir."

Under this undisputed testimony and under the provisions of the shipping contract between plaintiff and defendant which constituted the plaintiff's husband as her agent to accompany the shipment, giving him complete control and management of same, and under his own testimony that he had no complaint to make as to the treatment he received from the employees of the defendant company, it was error both under the law and the facts in this case for the court to instruct the jury that proof of the goods being delivered to the initial carrier in good condi-

tion raised the presumption which placed the burden upon the defendant to show that the damage did not occur on its lines. This is especially true of the damage done to the horse. As to just where the fruit and potatoes were frozen the evidence is not conclusive, nor is it conclusive as to whether they were damaged by concurring acts of negligence on the part of defendant. There might be possible grounds for conflicting inferences in this regard such as to justify the submission of such facts to the jury under proper instruction. But, as to the loss of the horse, the error is so clearly prejudicial that the judgment must be reversed. As to the value of the overcoat, the evidence being that it was not the property of plaintiff, the court very properly eliminated that from consideration.

We are not justified in holding a terminal carrier liable for damages received on the lines of the initial carrier under the conditions involved in the case at bar; for the rule is well settled that in the absence of any joint traffic arrangement, whereby connecting carriers act in partnership or as the agent of each other in the handling of freight, the terminal carrier is not liable for damages sustained on the lines of the initial carrier. And this rule is especially applicable where there is no pro rata sharing of freight charges made under the initial contract, and where the terminal carrier refuses to receive a shipment under the initial contract, but receives same under a new contract, whereby it makes its own rates and collects its own charges, and limits its liabilities to its own lines. See authorities cited in notes to *Atlantic C. L. R. Co. v. Riverside Mills,* 31 L. R. A. (N. S.) 94-98. See, also, *Carson v. Harris,* 4 G. Greene (Iowa) 516; *Anchor Line v. Dater,* 68 Ill. 369; also, *Roy v. Chesapeake & Ohio Ry. Co.,* 61 W. Va. 616, 57 S. E. 39, 31 L. R. A. (N. S.) 1; *Atl. C. L. R. Co. v. Riverside Mills,* 219, U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7; *Adams Express Co. v. Croninger,* decided by United States Supreme Court Jan. 6, 1913, and reported in 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. —.

Under the facts in this case, the foregoing authorities, and the reasons herein given, the judgment is reversed and the cause remanded.

By the Court: It is so ordered.